**Sean T. HADDON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

No. 94–5250.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 15, 1995.

Decided Nov. 3, 1995.

---

Rodney R. Sweetland, III, argued the cause and filed the brief, for appellant.

Richard A. Olderman, Attorney, United States Department of Justice, argued the cause, for appellee, with whom Frank W. Hunger, Assistant Attorney General, Eric H. Holder, Jr., United States Attorney, and Mark B. Stern, Attorney, United States Department of Justice, were on the brief, for appellee. Jeffrey F. Axelrad, Attorney, United States Department of Justice, entered an appearance for appellee.

Before: EDWARDS, Chief Judge, SENTELLE and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

Dissenting opinion filed by Circuit Judge SENTELLE.

TATEL, Circuit Judge:

This is a tort action by a White House chef against a White House electrician for allegedly threatening him with physical harm. Pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, an Assistant United States Attorney certified that the electrician acted within the scope of his employment at the time of the alleged

incident. The District Court agreed and, pursuant to the Westfall Act, substituted the United States as the defendant. Applying District of Columbia law, we find the alleged tort completely unrelated to the electrician's official duties and therefore outside the scope of his employment. We thus reverse and remand to the District Court with instructions to resubstitute the electrician as the defendant and to remand the case to the Superior Court of the District of Columbia where the chef first filed it.

## I.

According to the complaint's allegations, which are unchallenged at this stage of the litigation, Jeffrey A. Freeburger, an electrician at the White House, approached Sean T. Haddon, an assistant chef at the White House, and threatened to follow him to his car after work and "beat the shit out of him," unless the chef withdrew an Equal Employment Opportunity claim that he had filed against the White House Chief Usher. The chef's EEO claim, which we dismissed in *Haddon v. Walters*, 43 F.3d 1488 (D.C.Cir. 1995), did not involve the electrician in any way. On the record before us, the only connection between the electrician and the chef is that they both served on the staff of the White House Residence, which is headed by the Chief Usher.

Suing the electrician in Superior Court of the District of Columbia, the chef and his wife sought $2.4 million in compensatory and punitive damages for assault, intentional infliction of emotional distress, violation of the Bias–Related Crime Act of 1989, D.C.Code Ann. § 22–4004 (Supp.1995), and loss of consortium. They eventually dropped the loss of consortium claim, and the chef's wife withdrew from the lawsuit. The chef continues to press the first three claims, for which he seeks $2.3 million.

This tort suit then became a federal case. Acting pursuant to the general federal officer removal statute, 28 U.S.C. § 1442(a)(1) (1988)—permitting a federal officer with a colorable federal defense to remove a case to federal court, *see Mesa v. California*, 489 U.S. 121, 129, 109 S.Ct. 959, 964, 103 L.Ed.2d 99 (1989)—the electrician removed the case

to the United States District Court for the District of Columbia. Relying on the Westfall Act, 28 U.S.C. § 2679 (1988), he also filed a motion to substitute the federal government for himself as the sole defendant. In support of his substitution motion, he presented a certification from an Assistant U.S. Attorney that he was acting within the scope of his employment at the time of the alleged incident.

The District Court, applying D.C. law, ruled that the electrician acted within the scope of his employment when he allegedly threatened the chef. *Haddon v. United States*, No. 93–2626, slip op. at 5–11 (D.D.C. July 19, 1994). It therefore substituted the federal government as the sole defendant. *Id.* at 11. Since the chef's resulting lawsuit against the federal government was governed by the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 (1988 & Supp. V 1993), and since he had not exhausted his administrative remedies as required by the FTCA, the District Court dismissed the complaint for lack of subject matter jurisdiction. *Haddon*, slip op. at 11.

On appeal, the chef contends that the electrician was acting *outside* the scope of his employment when he threatened him. He asks us to vacate the District Court's order substituting the United States as the defendant and to remand the case to the D.C. Superior Court so that he can pursue his claims against the electrician.

## II.

Congress enacted the Westfall Act in response to the Supreme Court's decision in *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988). There, the Court held that federal officials generally enjoy absolute immunity from state tort lawsuits for money damages only if their conduct was both within the scope of employment and discretionary in nature. *Id.* at 299, 108 S.Ct. at 585; *see also Gutierrez de Martinez v. Lamagno*, —— U.S. ——, ——, 115 S.Ct. 2227, 2232, 132 L.Ed.2d 375 (1995). The Westfall Act eliminates the "discretionary" requirement and provides that federal employees' immunity from state tort lawsuits

for money damages hinges exclusively on whether they were acting within the scope of employment during the alleged incident. *Lamagno,* —— U.S. at ——, 115 S.Ct. at 2232; *Kimbro v. Velten,* 30 F.3d 1501, 1504 (D.C.Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2584, 132 L.Ed.2d 833 (1995).

■ Under the Westfall Act, an Attorney General or designee who believes that a federal employee was acting within the scope of employment at the time of the alleged incident may issue a certification to that effect. 28 U.S.C. § 2679(d)(2) (certification by Attorney General); 28 C.F.R. § 15.3 (1995) (certification by designee). Where, as here, the lawsuit is initially filed in state court, this certification has three consequences: it requires the Attorney General to remove the lawsuit to the local federal court; it requires the substitution of the United States for the federal employee as the defendant in the lawsuit; and it converts the lawsuit into an action against the United States under the Federal Tort Claims Act. 28 U.S.C. § 2679(d)(2). Although the Westfall Act makes Attorney General certification conclusive for purposes of removal, the Supreme Court recently held that it is *not* conclusive regarding substitution of the federal government. *Lamagno,* —— U.S. at —— – ——, 115 S.Ct. at 2235–36. Instead, the federal court may determine independently whether the employee acted within the scope of employment and, therefore, whether to substitute the federal government as the proper defendant. *Id.* at ——, 115 S.Ct. at 2236; *Kimbro,* 30 F.3d at 1505.

If the federal court determines that the employee acted *within* the scope of official duties, the employee becomes absolutely immune from actions for money damages arising from the same incident; plaintiff's only recourse is to proceed against the federal government under the Federal Tort Claims Act. 28 U.S.C. § 2679(b)(1); *Lamagno,* —— U.S. at ——, 115 S.Ct. at 2232–33. If, however, the federal court determines that the employee acted *outside* the scope of employment, the court must resubstitute the federal employee as the defendant. *See Lamagno,* —— U.S. at ——, 115 S.Ct. at 2236. The statute is silent on whether the federal court,

after resubstituting the federal employee as the defendant, should try the case or remand it to state court, and neither the Supreme Court nor this Court, until today, has resolved this issue. *See Lamagno,* —— U.S. at ——, 115 S.Ct. at 2236–37 (Ginsburg, J.) (plurality opinion of four Justices stating that the federal court would still have Article III jurisdiction over the case); *id.* at ——, 115 S.Ct. at 2237–38 (O'Connor, J., concurring) (declining to reach the issue); *id.* at ——, 115 S.Ct. at 2239 (Souter, J. dissenting) (four Justices concluding that retaining jurisdiction would approach, if not exceed, the outermost limit of the federal court's jurisdiction under Article III); *Kimbro,* 30 F.3d at 1509–10 (discussing, but not deciding whether the federal court should remand the case to state court).

### III.

With this background, we turn to the central issue in this case, namely, whether the electrician acted within the scope of his employment when he allegedly threatened to beat up the chef. This is a question of D.C. law. *See Kimbro,* 30 F.3d at 1506. Because the parties did not dispute the facts before the District Court, its determination that the electrician was acting within the scope of his employment was a conclusion of law, *Hoston v. Silbert,* 681 F.2d 876, 879 (D.C.Cir.1982), that we review *de novo, see Bennett Enters. v. Domino's Pizza, Inc.,* 45 F.3d 493, 497 (D.C.Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 174, 133 L.Ed.2d 115 (1995).

■ As its framework for determining whether an employee acted within the scope of employment, the Court of Appeals for the District of Columbia looks to the Restatement (Second) of Agency (1957). *Moseley v. Second New St. Paul Baptist Church,* 534 A.2d 346, 348 n. 4 (D.C.1987). According to the Restatement, the

> [c]onduct of a servant is within the scope of employment if, but only if: [1] it is of the kind he is employed to perform; [2] it occurs substantially within the authorized time and space limits; [3] it is actuated, at least in part, by a purpose to serve the master; and [4] if force is intentionally

used by the servant against another, the use of force is not unexpected by the master.

Restatement (Second) of Agency § 228. Because the complaint states that the threat occurred during the workday on White House premises and contains no allegation that the electrician used any force, only the first and third criteria are at issue.

■ Finding that the electrician's alleged threat was connected to a "job-related controversy"—the chef's EEO complaint—the District Court concluded that the electrician acted within the scope of his employment. *Haddon,* slip op. at 6–9. Although the existence of a job-related controversy may support a jury determination that an employee was at least partially motivated to further the employer's interests (the third prong of the Restatement test), it cannot support a conclusion that the employee's conduct was "of the kind he was employed to perform" (the first prong of the Restatement test). *See Weinberg v. Johnson,* 518 A.2d 985, 991 (D.C.1986) (*Johnson II* ). The D.C. Court of Appeals has repeatedly emphasized that the plaintiff must satisfy both criteria to establish that an employee acted within the scope of employment. *See, e.g., Johnson II,* 518 A.2d at 990–92; *Boykin v. District of Columbia,* 484 A.2d 560, 563 n. 2 (D.C.1984); *see also Hoston,* 681 F.2d at 879–80. Because we hold that the electrician's conduct was not "of the kind" he was employed to perform, we do not decide whether the District Court properly concluded that the electrician was motivated by a desire to help his employer.

To qualify as conduct of the kind he was employed to perform, the electrician's actions must have either been "of the same general nature as that authorized" or "*incidental* to the conduct authorized." Restatement (Second) § 229 (emphasis added). As the Government concedes, the White House employed Mr. Freeburger to work as an electrician, not to threaten kitchen staff. Defendant's Memorandum in Support of Its Motion to Dismiss (February 16, 1994) at 12. Mr. Freeburger's alleged conduct was thus not "of the same general nature" as the work he was hired to perform. This leaves the Government only with its argument that the electrician's conduct was "incidental" to his authorized duties.

According to the D.C. Court of Appeals, conduct is "incidental" to an employee's legitimate duties if it is "foreseeable." *See e.g., Johnson II,* 518 A.2d at 990; *District of Columbia v. Coron,* 515 A.2d 435, 438 (D.C. 1986). "Foreseeable" in this context does not carry the same meaning as it does in negligence cases; rather, it requires the court to determine whether it is fair to charge employers with responsibility for the intentional torts of their employees. *See Penn Cent. Transp. Co. v. Reddick,* 398 A.2d 27, 29–30 (D.C.1979). To be foreseeable, the torts must be " 'a direct outgrowth of the employee's instructions or job assignment.' " *Boykin,* 484 A.2d at 562 (quoting *Penn Cent.,* 398 A.2d at 32). It is not enough that an employee's job provides an "opportunity" to commit an intentional tort. *Boykin,* 484 A.2d at 563; *accord Johnson II,* 518 A.2d at 988–89. The D.C. Court of Appeals does not distinguish between intentional torts that involve physical contact and those that do not. *See, e.g., Johnson II,* 518 A.2d at 990; *Howard Univ. v. Best,* 484 A.2d 958, 987 (D.C. 1984).

The distinction between intentional torts that are a "direct outgrowth" of an employee's instructions or job assignment and those that are simply made possible by the employee's job is apparent from a series of cases decided by this Court and the D.C. Court of Appeals. In *Lyon v. Carey,* 533 F.2d 649 (D.C.Cir.1976), for example, we upheld a jury verdict that a mattress deliveryman acted within the scope of his employment when he assaulted and raped plaintiff immediately following a dispute over whether he should carry the mattress into the apartment for her inspection and whether a check was an acceptable means of payment. We observed that the assault "arose naturally and immediately between [the deliveryman] and the plaintiff about two items of great significance in connection with his job[:] the request of the plaintiff ... to inspect the mattress and springs before payment ... and [the deliveryman's] insistence on getting cash rather than a check." *Id.* at 652. "The dispute arose," we noted, "out of the very transaction

which had brought [the deliveryman] to the premises." *Id.* In a similar case, *Johnson v. Weinberg,* 434 A.2d 404 (D.C.1981), the D.C. Court of Appeals ruled that a laundromat could be liable for injuries inflicted when an employee responsible for removing clothes from washing machines shot a customer during a dispute over missing shirts. Because "[t]he assault arose out of the transaction which initially brought [the customer] to the premises ... and was triggered by a dispute over the conduct of the employer's business," the court held that the jury could find the shooting incidental to employment. *Id.* at 409. In *Howard University v. Best,* the only female member of one of the University's departments accused her dean of sexual harassment. 484 A.2d at 981. Because many of the alleged incidents occurred during faculty, administrative, or other professional meetings, the court held that a jury could reasonably find that the dean acted within the scope of his employment. *Id.* at 987.

The D.C. Court of Appeals reaches a different result when employees' intentional torts do not arise directly from the performance of their authorized duties. In *Penn Central Transportation Co. v. Reddick,* for example, the D.C. Court of Appeals held a railroad not liable when its employee, traveling from one worksite to another after completing his duties, allegedly kicked a taxicab driver. 398 A.2d at 32. On the issue of foreseeability, the court found that the employee's conduct "was neither a direct outgrowth of [his] instructions or job assignment, nor an integral part of the employer's business activity." *Id.* Rather, it found that "nothing in the business of running a railroad ... makes it likely that an assault will occur between a railroad brakeman and a taxicab driver over the celerity with which the latter will provide a taxicab ride to the former." *Id.* And finally, in *Boykin v. District of Columbia,* the court held the District not liable to an elementary school student who alleged that the city's coordinator of programs for deaf and blind children sexually assaulted her in a school cafeteria. 484 A.2d at 564. According to the court, the coordinator's action was not foreseeable because it was not "a direct outgrowth" of his authorized duties. *Id.* at 562. As the court noted in a later case, the coordinator "was not performing his teaching responsibilities at any time during the encounter with the student." *Johnson II,* 518 A.2d at 989.

Applying these cases to the facts before us, we observe that Mr. Freeburger's alleged tort did not arise directly out of his instructions or job assignment as a White House electrician. While our dissenting colleague correctly observes that the dispute here relates to the *employer's* business, *see* Dissent at 2, D.C. law also requires that the *alleged tort* arise from the *employee's* authorized duties. Unlike the rape in *Lyon* and the shooting in *Johnson,* the electrician's threat did not stem from a dispute over the performance of *his* work. Unlike the sexual harassment in *Howard University,* the electrician was not performing his assigned duties at the time of the incident. The electrician's threat related to an EEO complaint not involving him in any way. This case is thus closer to the kick in *Penn Central* and the assault in *Boykin.* As in those cases, the electrician's conduct was completely unrelated to his official responsibilities. His action was therefore not within the scope of his employment.

We decline the Government's invitation to expand the definition of scope of employment beyond the boundaries currently established under D.C. law. *See* Brief for the United States at 14–18. It is true, as the Government points out, that nearly two decades ago the D.C. Court of Appeals observed that "[r]ecent cases in this and other jurisdictions indicate a trend toward the more liberal application of the doctrine of respondeat superior." *District of Columbia v. Davis,* 386 A.2d 1195, 1203–04 (D.C.1978). But it is also true that this trend has apparently reached its limit. In *Boykin,* the court acknowledged that *Lyon* and *Johnson* mark the outer limits of scope of employment, 484 A.2d at 563, and in more recent cases it expressly declined to expand the scope of employer liability, *e.g., Coron,* 515 A.2d at 438 (declining to hold police department liable for actions of police officers whenever on duty); *Sebastian v. District of Columbia,* 636 A.2d 958, 962–63 (D.C.1994) (declining to follow the modern

trend holding the government liable under the common carrier theory for the intentional torts of its ambulance drivers). If the scope of employer liability for the intentional torts of employees is to be expanded, we leave it to the D.C. courts to do so. *See Nelson v. American Nat'l Red Cross,* 26 F.3d 193, 199 n. 5 (D.C.Cir.1994) (we "rightfully" defer to the D.C. courts on questions of common law); *cf. Erie R.R. v. Tompkins,* 304 U.S. 64, 74–80, 58 S.Ct. 817, 820–823, 82 L.Ed. 1188 (1938).

Because the electrician's alleged threat was not "incidental" to his authorized duties, it was outside the scope of his employment. Therefore, the District Court should resubstitute Mr. Freeburger as the sole defendant.

## IV.

This brings us to the question whether the District Court should try this case against Mr. Freeburger or remand it to the D.C. Superior Court. Admittedly, this is a close question. The Westfall Act contains two relevant provisions. Section 2679(d)(2) covers cases where, as here, the Attorney General certifies that the employee acted within the scope of employment at the time of the alleged incident. Although Section (d)(2) provides that Attorney General certification is conclusive "for purposes of removal," it is silent on whether a district court, after reviewing the certification and finding that the employee acted outside the scope of duties, should remand the case to state court. By comparison, Section 2679(d)(3), which covers cases where the Attorney General has *declined* to issue a scope of employment certification, provides that if the federal court determines that the employee acted outside the scope of employment, the case "shall be remanded" to state court. *See Lamagno,* —— U.S. at ——, 115 S.Ct. at 2235.

Our sister circuits are divided on the significance of Section (d)(2)'s silence on the remand issue. The Third Circuit requires the federal court to retain the case. *Aliota v. Graham,* 984 F.2d 1350, 1356 (3d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993). The First Circuit interprets the statute to require the district court to remand the case to state court. *Nasuti v. Scannell,* 906 F.2d 802, 814 & n. 17 (1st

Cir.1990). The Fourth Circuit takes a completely different approach, looking to the general remand statute, 28 U.S.C. § 1447(c), for the answer. *See Jamison v. Wiley,* 14 F.3d 222, 239 (4th Cir.1994) (interpreting § 1447(c) to require that a case properly removed in the first instance must remain in federal court).

■ As a threshold matter, we agree with the Third and First Circuits that the Westfall Act controls the remand question. Since the Westfall Act deals specifically with lawsuits brought against federal employees, *see* Pub.L. No. 100–694, § 2, 102 Stat. 4563–64 (1988) (findings and purposes); *Lamagno,* —— U.S. at ——, 115 S.Ct. at 2232, we have no need to rely upon the general remand statute to resolve this issue. *See, e.g., Green v. Bock Laundry Machine Co.,* 490 U.S. 504, 524, 109 S.Ct. 1981, 1992, 104 L.Ed.2d 557 (1989) ("general statutory rule usually does not govern unless there is no more specific rule").

■ According to the Third Circuit, Section (d)(2)'s requirement that certification is conclusive regarding removal must do more than "simply provide a temporary basis for removal until the district court review[s] it." *Aliota,* 984 F.2d at 1356. The court was apparently concerned that certification would lose its importance if district courts could remand under Section (d)(2) when there *is* an Attorney General certification, just as they *must* remand under Section (d)(3) when there is *no* certification. *Id.* With all due respect, we are not persuaded. Section (d)(3) permits state courts to make the scope of employment determination, while Section (d)(2) requires federal courts to do so. *See Lamagno,* —— U.S. at ——, 115 S.Ct. at 2235. Allowing federal courts to remand cases to state courts under both Sections (d)(2) and (d)(3) would thus neither erase the differences between these two sections nor render Attorney General certifications meaningless. To the contrary, the essential benefit of the certification process—guaranteeing that scope of employment determinations are made in a federal forum—would remain. *See Kimbro,* 30 F.3d at 1508.

We thus agree with the First Circuit, which reads Sections (d)(2) and (d)(3) in harmony, not in conflict with each other, inferring the power to remand when there is certification under Section (d)(2) from the explicit power to do so under Section (d)(3). *Nasuti,* 906 F.2d at 814 & n.17. We find support for this interpretation in the Supreme Court's *Lamagno* opinion. The clear message of *Lamagno* is that courts should read Sections (d)(2) and (d)(3) together. *See* — U.S. at — – —, 115 S.Ct. at 2234–35. The Court held that a district court has power to review the scope of employment issue under Section (d)(2), even though only Section (d)(3) explicitly authorizes such a review. *See id.* at —, 115 S.Ct. at 2234–36. To us, this reasoning also requires the district court to remand a Section (d)(2) case to state court, even though Section (d)(3) is the only provision that explicitly compels it to do so. While the four dissenters in *Lamagno* reached a different conclusion, *see id.* at —, 115 S.Ct. at 2239 (Souter, J., dissenting), the issue of remand was not before the Court because the case was originally brought in federal court, *id.* at —, 115 S.Ct. at 2236 (plurality opinion).

Our interpretation of the Westfall Act is also consistent with our responsibility to construe statutes to avoid constitutional questions. *See United States v. X–Citement Video, Inc.,* — U.S. —, — – —, 115 S.Ct. 464, 471–72, 130 L.Ed.2d 372 (1994). Permitting a federal court to retain a case after determining that no federal issue or diversity of citizenship exists would, as a majority of the Supreme Court recognized, potentially raise serious questions regarding Article III jurisdiction. *Lamagno,* — U.S. at — – —, 115 S.Ct. at 2237–38 (O'Connor, J., concurring); *id.* at — – —, 115 S.Ct. at 2238–39 (Souter, J., dissenting). Requiring remand to state court avoids these constitutional questions, while in no way undermining the purposes of the Westfall Act. Congress intended the Act "to protect Federal employees from personal liability for common law torts committed within the scope of their employment, while providing persons injured by the common law torts of Federal employees with an appropriate remedy against the United States." § 2, 102 Stat. at 4564. Allowing federal courts to try garden-variety tort suits following a judicial determination that the federal employees acted *outside* the scope of employment would not serve Congress's objectives.

### V.

We reverse the District Court's finding that Mr. Freeburger acted within the scope of his employment when he allegedly threatened Mr. Haddon, and remand with instructions to resubstitute Mr. Freeburger as the defendant and to remand the case to the Superior Court of the District of Columbia.

*So ordered.*

SENTELLE, Circuit Judge, dissenting:

Although I concede that we are bound by the Supreme Court's decision in *Gutierrez de Martinez v. Lamagno,* — U.S. —, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995), a binding that I find not terribly comfortable, I nonetheless am unable to join the conclusion of my colleagues.

First, as to the merits decision that the conduct alleged falls outside the scope of employment under District of Columbia ("D.C.") law, I would reach the opposite conclusion. I do not find the state of D.C. law as clear as my colleagues do. While I agree that the D.C. courts, and this Court applying D.C. law, have paid lip service to the principles of the RESTATEMENT (SECOND) OF AGENCY (1957), I cannot discern that D.C. law has used those principles to draw a line demarcating scope of employment outside of which the present conduct falls. While I agree that the electrician's conduct in allegedly threatening his co-employee was not "of the kind" that he was employed to perform, Maj. op. at 6, neither was the mattress delivery man in *Lyon v. Carey,* 533 F.2d 649 (D.C.Cir.1976), employed to rape his customers. Nonetheless, in that case we upheld a jury verdict against the employer on the theory that "[t]he dispute arose out of the very transaction which had brought [the deliveryman] to the premises." *Id.* at 652. Likewise, I do not think that the laundromat employee in *Johnson v. Weinberg,* 434 A.2d 404 (D.C. 1981), was performing work of the kind for

which laundromat clerks are hired when he shot a customer. Again, it was only the fact that "[t]he assault arose out of the transaction" which brought the tortfeasor and the victim to the same premises coupled with the fact that the shooting "was triggered by a dispute over the conduct of the employer's business" that led the D.C. Court of Appeals to hold that the jury could find the shooting incidental to employment. In the present case, the alleged tortfeasor and the alleging victim were at the White House at the same time only because their employment brought them there. The dispute arose out of the business of their employer in as true a sense as did the disputes in either *Johnson* or *Lyon*. I would therefore decide this case consistently with those cases. I hasten to add that I am not convinced that those two cases are properly decided, but under *Erie R. Co. v. Tompkins,* 304 U.S. 64, 74–80, 58 S.Ct. 817, 820–823, 82 L.Ed. 1188 (1938), we ask not whether the declared law of the place is right, we simply rightfully defer to it.

I also am not convinced that we rule rightly when we direct the District Court to remand this case to the Superior Court from whence it came. I agree with the Third Circuit in *Aliota v. Graham,* 984 F.2d 1350 (3d Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993), that the certification which underlay the original removal "conclusively establish[ed]" subject matter jurisdiction for purposes of 28 U.S.C. § 1447. I likewise agree with the Fourth Circuit that the general law of remand as governed by 28 U.S.C. § 1447, entitled "Procedure after removal generally," instructs that the fact of "the federal court ultimately reject[ing] the federal defense that supported removal ... does not mean that it thereby loses subject matter jurisdiction over the removed action." *Jamison v. Wiley,* 14 F.3d 222, 239 (4th Cir.1994). While the majority is of course correct that we have a "responsibility to construe statutes to avoid constitutional questions," Maj. op. at 1427, citing *United States v. X–Citement Video, Inc.,* — U.S. ——, —— - ——, 115 S.Ct. 464, 471–72, 130 L.Ed.2d 372 (1994), this does not mean we should misconstrue a statute in order to avoid the constitutional question. Because I think the Third and Fourth Circuits have

construed the two possibly relevant removal and remand statutes correctly and consistently, I would find the constitutional question unavoidable. Because the majority has saved me that inevitability, I will not attempt to answer today the question that will inevitably arise another day under 28 U.S.C. § 1447 or under 28 U.S.C. § 1367 ("Supplemental jurisdiction").

I hasten to add that I think that both questions upon which I dissent are exceptionally close ones. I do not find the state of the District of Columbia's law on the scope of employment to be so clear that I am plainly right; I simply see it as so unclear that I cannot conclude that the Attorney General and the District Court erred in reaching the conclusion opposite of that of the majority. As to the remand question, as the majority notes, Maj. op. at 1423, the Supreme Court, insofar as we are able to discern from *Gutierrez,* would divide four to four with the position of Justice O'Connor not yet stated.