Camille M. CAESAR Plaintiff,

v.

**UNITED STATES of America**
**Defendant.**

**No. CIV.A.02–612(EGS).**

United States District Court,
District of Columbia.

March 30, 2003.

Sander M. Davidson, Karp, Frosh, Lapidus, Wigodsky & Norwind, P.A., Washington, DC, for Plaintiff.

Heather D. Graham–Oliver, U.S. Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

SULLIVAN, District Judge.

Plaintiff Camille M. Caesar commenced a tort action against her co-worker, Ms. Patricia Robinson, in the Superior Court of the District of Columbia. Both Ms. Caesar and Ms. Robinson are employed in the office of the General Counsel for the Board of Governors of the Federal Reserve System. Upon certification by the U.S. Attorney General that Ms. Robinson was acting within the scope of her employment at the time of the incident underlying plaintiff's claims, the Superior Court action was removed to this Court. Defendant now moves to dismiss plaintiff's claims in their entirety pursuant to Fed.R.Civ.P. 12(b)(1) and Fed.R.Civ.P. 12(b)(6), alleging, *inter alia,* that Ms. Caesar's exclusive remedy, if any, lies under the Federal Employees' Compensation Act, 5 U.S.C. § 8101 *et seq.* ("FECA"). For the following reasons, defendant's motion is hereby **GRANTED** and plaintiff's action is **DISMISSED** in its entirety.

## I. BACKGROUND

Ms. Caesar alleges that, on July 11, 2001, at approximately 6:00 p.m., she went to a colleague's office to discuss a matter on which they were working. Compl. ¶ 2. As she stood in the colleague's doorway chatting, Ms. Caesar mentioned that she was surprised that their common supervisor had become tied up as of late due to recent developments in another matter because she had, some time previously, sent an article warning of the developments in question to two members of the team working with the supervisor on that project. Caesar Aff. ¶ 6. At this point, Ms. Caesar alleges that Ms. Robinson, another member of the team working on the project she was discussing, whose office was within earshot of where Ms. Caesar was

standing, took offense to her comments and began yelling at her. *Id.* ¶ 7. A verbal exchange between the two women ensued. *Id.* It is undisputed that the exchange clearly related to Ms. Caesar's comments regarding the project on which Ms. Robinson was working. *Id.;* Robinson Decl. ¶¶ 5–6. Ms. Caesar alleges that, immediately following their verbal exchange, Ms. Robinson slammed her office door into Ms. Caesar using her full body weight, hitting Ms. Caesar in the back of her right shoulder, and continued to push against the door and Ms. Caesar. Caesar Aff. ¶ 8.

Ms. Caesar was initially treated at Georgetown University Hospital for injuries arising from this incident, and was subsequently diagnosed with a right rotator cuff tear, for which she ultimately underwent surgery. *Id.* ¶ 11. Ms. Caesar continues to suffer pain as a result of this injury, and her activities remain restricted. *Id.*

Ms. Caesar subsequently reported this incident to her supervisors, the General Counsel, the Assistant Director of Human Resources, the Vice Chairman of the Federal Reserve Board, the Inspector General's Office, and the District of Columbia police. Caesar Aff. ¶ 10. She also filed a "Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation" dated February 15, 2002 with the U.S. Department of Labor pursuant to FECA.

Ms. Caesar commenced this action against Ms. Robinson in D.C. Superior Court on March 1, 2002, asserting one count of assault and battery and one count of negligent operation of a door. On March 29, 2002, Assistant United States Attorney Mark Nagle, Chief of the Civil Division, certified, pursuant to 28 U.S.C. § 2679(d) and the authority delegated to the United States Attorney by 28 C.F.R. § 15.3, that Ms. Robinson was acting within the scope of her employment at the time

the acts upon which Ms. Caesar's claims are based. Upon filing of the certification, the United States was substituted as the sole defendant in this action, pursuant to 29 U.S.C. § 2679(d)(2), and the action was removed to this Court.

## II. ANALYSIS

### A. *Standard of Review*

The Court will not grant a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). Accordingly, at this stage of the proceedings, the Court accepts as true all of the factual allegations in plaintiff's Complaint. *See Doe v. United States Dep't of Justice,* 753 F.2d 1092, 1102 (D.C.Cir.1985). Plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged." *Kowal,* 16 F.3d at 1276.

The standard of review for a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is virtually identical to that used for 12(b)(6) motions. *See, e.g., Vanover v. Hantman,* 77 F.Supp.2d 91, 98 (D.D.C.1999). However, the Court is free to consider material outside the pleadings for purposes of resolving jurisdictional issues. *Artis v. Greenspan,* 223 F.Supp.2d 149, 152 (D.D.C.2002) ("[a] court may consider material outside of the pleadings in ruling on a motion to dismiss for lack of venue, personal jurisdiction or subject matter jurisdiction.") (citing *Land v. Dollar,* 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947)). So long as the Court considers matters outside the pleadings only with respect to the issues raised pursuant to Fed.R.Civ.P. 12(b)(1)

and relating to lack of subject matter jurisdiction, a motion to dismiss is not converted to one for summary judgment. *Artis v. Greenspan,* 223 F.Supp.2d at 152 n. 1. *Id.* In the Rule 12(b)(1) context, the plaintiff bears the burden of proving jurisdiction. *Id.*

### B. *Federal Employees' Compensation Act*

Defendant submits that this Court lacks subject matter jurisdiction over this action because plaintiff's exclusive remedy lies under the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.,* which provides for compensation to federal employees for injuries sustained while performing their official duties. 5 U.S.C. § 8102; 5 U.S.C. § 8116(c); *see also United States v. Lorenzetti,* 467 U.S. 167, 169, 104 S.Ct. 2284, 2286, 81 L.Ed.2d 134 ("Federal employees who are injured while engaged in the performance of their official duties are entitled under FECA to compensation for medical expenses, lost wages, and vocational rehabilitation. Because the United States' liability for work-related injuries under FECA is exclusive, *see* § 8116(c), respondent cannot recover from the United States for losses such as pain and suffering that are not compensated under FECA."); *Carroll v. Tennessee Valley Authority,* 697 F.Supp. 508, 511 (D.D.C.1988).

The question of whether plaintiff's claims fall within the ambit of FECA, and are thus beyond this Court's jurisdiction, turns on whether Ms. Caesar was injured "while engaged in the performance of [her] official duties." *See United States v. Lorenzetti,* 467 U.S. at 169, 104 S.Ct. 2284.

Plaintiff's entire opposition to defendant's motion is premised on her contention that Ms. Robinson was not, as defendant contends, acting within the scope of her employment when the incident underlying these claims occurred. Pl.'s Opp'n at 2. Plaintiff further submits that, pursuant to the U.S. Supreme Court's decision in *Gutierrez de Martinez v. Lamagno,* 515 U.S. 417, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995), she is entitled to an evidentiary hearing on this issue.[1] *Id.* Plaintiff concedes that, should the Court find at the conclusion of such a hearing that Ms. Robinson was acting within the scope of her employment at the time she allegedly injured Ms. Caesar, her claims would be subject to dismissal. *Id.*

It is true that *Lamagno* holds that certification by the U.S. Attorney that a federal employee was acting within the scope of her employment is subject to judicial review by the District Court. *Lamagno,* 515 U.S. at 436–37, 115 S.Ct. 2227; *see also Haddon v. United States,* 68 F.3d 1420, 1423 (D.C.Cir.1995); *Tripp v. Executive Office of the President,* 200 F.R.D. 140, 147 (D.D.C.2001); *but see Hosey v. Jacobik,* 966 F.Supp. 12 (D.D.C.1997) ("The Government's certification creates a rebuttable presumption that [the employee] was acting within the scope of employment."). However, neither *Lamagno* nor the cases that follow it confer on the party challenging the certification a right to an evidentiary hearing on the question. *Koch v. United States,* 209 F.Supp.2d 89, 92–94, Civ. A. No. 01–1385, 2002 U.S. Dist. LEXIS 11090, *7–10 (D.D.C. May 17, 2002). If the Court may independently determine, taking all of

---

1. Plaintiff also indicates her intention to file a Motion to Vacate the Attorney General's Certification on or before June 26, 2002. As of the date of this Order, no such motion has been filed in this case, and plaintiff has made no further representations to the Court regarding her intent to file such a motion. Ac-

cordingly, the Court cannot, as plaintiff requests, defer a ruling on defendant's motion until it has had an opportunity to consider the Motion to Vacate Certification, and must decide the motion to dismiss on the record before it.

the allegations of the Complaint as true, and making all reasonable factual inferences in the plaintiff's favor, that, as a matter of law, the alleged tortfeasor was acting within the scope of her employment when plaintiff was injured, then no evidentiary hearing is required. *See Hoston v. Silbert,* 681 F.2d 876, 879 (D.C.Cir.1982) ("Whether given acts are within the scope of employment is ultimately a legal question."); *Koch v. United States,* 209 F.Supp.2d 89, 92–94, Civ. A. No. 01–1385, 2002 U.S. Dist. LEXIS 11090 *7–10 (no discovery or evidentiary hearing warranted where, even assuming plaintiff's factual allegations to be true, plaintiff fails to show employee was acting outside of the scope of her employment); *see also Kimbro v. Velten,* 30 F.3d 1501, 1509 (D.C.Cir. 1994) (if there is a *dispute as to a material fact,* the district court must resolve the question of scope of employment at an evidentiary hearing). Such is the case here.

The question of whether Ms. Robinson was acting within the scope of employment at the time Ms. Caesar was injured is governed by the law of the District of Columbia. The District of Columbia Court of Appeals has adopted the rule of the Restatement (Second) of Agency § 228, which provides that the

conduct of a servant is within the scope of employment if, but only if, [1] it is of the kind he is employed to perform; [2] it occurs substantially within the authorized time and space limits; [3] it is actuated, at least in part, by a purpose to serve the master, and [4] if force is intentionally used by the servant against another, the use of force is not unexpected by the master.

*Haddon,* 68 F.3d at 1423–24. All four of these requirements are met with respect to Ms. Robinson's conduct on the facts as alleged by Ms. Caesar.

While Ms. Caesar, by submitting Ms. Robinson's job description, presumably means to argue that it does not include slamming doors into people, such a finding is not dispositive of whether Ms. Robinson was acting within the scope of her employment when she is alleged to have done so. *See* Caesar Aff. ¶ 12 and Attachment; *Haddon,* 68 F.3d at 1425–25; *Hosey,* 966 F.Supp. at 14. So long as Ms. Robinson's actions were "incidental to the conduct authorized," part one of the Restatement's four-part scope of employment test is met. *See Haddon,* 68 F.3d at 1424. Given that Ms. Robinson's alleged tortious conduct occurred during or immediately following a dispute regarding how a particular project Ms. Robinson was working on was being handled, it is clear that it was "triggered by a dispute over the conduct of the employer's business" and "arose naturally and immediately between [Ms. Robinson] and plaintiff ... in connection with [her] job." *Lyon v. Carey,* 533 F.2d 649, 652 (D.C.Cir.1976) (mattress deliveryman's assault and rape of plaintiff immediately following dispute over delivery and payment of mattress held to be within the scope of employment); *Johnson v. Weinberg,* 434 A.2d 404, 409 (D.C.1981); *see Koch v. United States,* 209 F.Supp.2d 89, 93–94, Civ. A. No. 01–1385, 2002 U.S. Dist. LEXIS 11090 *11–12 (employee's anger at plaintiff was direct outgrowth of plaintiff's critique of employee's work performance). As a result, it falls within the reach of authorities finding such conduct to be a "direct outgrowth" of an employee's instruction or job assignment, rendering it "incidental to the conduct authorized." *See Haddon,* 68 F.3d at 1424, 1425 (noting that where tortious conduct stems from dispute over tortfeasor's work performance, it will likely be within the scope of employment); *Koch v. United States,* 209 F.Supp.2d 89, 93–94, Civ. A. No. 01–1385, 2002 U.S. Dist. LEXIS 11090 *11–12.

For similar reasons, Ms. Robinson's conduct meets the remaining three parts of the Restatement's "scope of employment" test. Ms. Robinson was at her place of employment during regular business hours when the incident in question took place. Given that she was presumably outraged by Ms. Caesar's express or implied slight regarding the project she was working on, her conduct, as described by Ms. Caesar, was actuated, at least in part to serve her employer. *See* Caesar Decl. ¶¶ 7–8; Robinson Decl. ¶ 5. And, while not to be encouraged, it is not entirely unexpected that an office employee would slam a door, either intentionally or negligently.

Where, as here, the underlying material facts are undisputed, it is appropriate for this Court to find, as a matter of law, that Ms. Robinson was acting within the scope of her employment at the time Ms. Caesar was injured. *See Koch v. United States,* 209 F.Supp.2d 89, 93–94, Civ. A. No. 01–1385, 2002 U.S. Dist. LEXIS 11090 *11–12. Such a review remains *de novo,* and does not constitute, as plaintiff contends, the equivalent of the rubber stamping of executive decision-making by a petty functionary rejected by the *Lamagno* Court, but rather a considered application of the governing law to the facts before it. *See* 515 U.S. at 426, 429, 115 S.Ct. 2227.

More importantly, the question of whether Ms. Robinson was acting within the scope of her employment is pertinent only to the question of whether the United States is properly substituted for Ms. Robinson as a defendant. *See Lamagno,* at 432, 115 S.Ct. 2227; *Haddon,* 68 F.3d at 1423. The relevant inquiry for the purpose of determining whether Ms. Caesar's claims fall within the exclusive purview of FECA, thus depriving this Court of jurisdiction, is whether *Ms. Caesar* was acting within the scope of employment at the time she sustained her injuries. *See, e.g., Tredway v. District of Columbia,* 403 A.2d 732 (D.C.1979) (teacher attacked by strangers in a classroom during her work hours was acting in the course of her employment, bringing her claims within the scope of FECA).

It has long been held that "[p]hysical attacks by third parties sustained in the performance of the employee's duties are clearly covered by FECA." *Id.* at 735. Under FECA, "[a]ll that is required is that the injury result from a risk incidental to the environment in which the employment places the claimant." *Id.* at 736. Ms. Caesar does not dispute, and her allegations confirm, that she was in her regular office area, performing her employment duties, speaking with a colleague about a project they were both working on, immediately before Ms. Robinson allegedly struck her while slamming her office door. Furthermore, Ms. Robinson's actions are alleged to be a response to Ms. Caesar's comment about a project within their division, with which both women had at least some marginal involvement. As a result, this Court finds, as a matter of law, that Ms. Caesar sustained her injuries while performing her official duties. Accordingly, her exclusive remedy, if any, for those injuries lies under FECA, and this Court is without jurisdiction to hear her claims.[2]

## III. CONCLUSION

Upon careful consideration of defendant's motion to dismiss, the opposition and reply thereto, and the governing statu-

---

**2.** Because the Court finds itself without jurisdiction to hear Ms. Caesar's claims, it need not reach the questions of whether the United States has waived its sovereign immunity under the Federal Tort Claims Act ("FTCA") for the causes of action asserted, or whether plaintiff has exhausted mandatory administrative remedies under the FTCA. *See* Def.'s Mot. at 5–8.

tory and case law, for the foregoing reasons, defendant's motion to dismiss is hereby **GRANTED.**