**COUNCIL ON AMERICAN ISLAMIC RELATIONS, INC., Plaintiff,**

v.

**Cass BALLENGER, Defendant.**

**No. CIV.A. 03–2488(RJL).**

United States District Court, District of Columbia.

March 29, 2005.

Julie Ann Quagliano, Quagliano & Seeger, P.C., Washington, DC, for Plaintiff.

Kerry W. Kircher, Office of General Counsel U.S. House of Representatives, Washington, DC, for Defendant.

## MEMORANDUM OPINION

LEON, District Judge.

Plaintiff, Council on American–Islamic Relations, Inc. ("CAIR"), filed the instant action against Defendant, former United States Congressman Cass Ballenger ("Congressman Ballenger"), alleging the common law tort claims of slander *per se,* slander, libel *per se,* and libel.[1] Presently before the Court is Defendant's Motion to Dismiss. Defendant contends that a statement attributed to him was made in the scope of his employment as a federal employee and, as a consequence, the Plaintiff's suit should be *converted* into an action against the United States, and the claims should be barred under the doctrine of sovereign immunity. After due consideration of the pleadings, the Court upholds the Government's certification that the Defendant's statement was made in the scope of his employment and GRANTS the Defendant's Motion to Dismiss.

## I. BACKGROUND

██ When a federal employee is sued for a wrongful or negligent act, the Westfall Act empowers the Attorney General, or his designee, to certify that the employee was acting at the time within the scope of his employment. *See* Federal Employees Liability Reform and Tort Compensation Act of 1988 ("Westfall Act"), 28 U.S.C. § 2679(d)(1). "Upon certification, the employee is dismissed from the action and the United States is substituted as Defendant." *Schneider v. Kissinger,* 310 F.Supp.2d 251, 264 (D.D.C.2004). In the instant case, pursuant to 28 U.S.C. § 2679(d), the United States Attorneys Office for the District of Columbia certified that Congressman Ballenger was acting within the scope of his employment as a

United States Congressman when, in response to a reporter's inquiry about his recent divorce from his wife of fifty years, he attributed their separation, in part, to his wife's discomfort with their neighbors, CAIR, who the Congressman then characterized as the "fund-raising arm for Hezbullah." Affidavit of Cass Ballenger ("Ballenger Aff.") ¶ 8; Compl. ¶ 6; Pl.'s Br. Opp'n FTCA Cert. at 5; Def.'s Fed. Tort Claims Act Scope Cert. ("Def.'s FTCA Cert.") 7–8. In its memorandum in support of certification, the Government argued that the Congressman was acting "within the scope of his employment," pursuant to the test set forth in the Restatement (Second) of Agency, because speaking to the press is conduct expected of a United States Congressman, and the statement was made from his congressional office during regular business hours. *See* Def.'s FTCA Cert. at 8–12.

Upon receiving the Government's certification, Defendant filed the instant motion arguing that the United States was now the proper Defendant, and Plaintiff's claims should be barred under the doctrine of sovereign immunity. Def.'s Mot. Dismiss at 5. In its opposition, Plaintiff contends that the Congressman's statement was outside the scope of his employment because statements concerning marital status do not concern conduct that he was employed to perform, and the statement was not made in furtherance of his legislative agenda. Pl.'s Br. Opp'n FTCA Cert. at 6–13. For the following reasons, the Court concludes that Congressman Ballenger was acting within the scope of his employment, and the United States is immune from suit under § 2680(h) of the Federal Tort Claims Act ("FTCA").

---

1. Mr. Ballenger was an elected member of Congress from North Carolina when this suit was filed in 2003. In 2004, he retired from Congress.

## II. *SCOPE OF EMPLOYMENT*

■ Judicial review of the government's certification that an employee was acting within the scope of his employment is *de novo*. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 423–434, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995). Although not conclusive, the certification must be treated by the Court as *prima facie* evidence. *Kimbro v. Velten*, 30 F.3d 1501, 1509 (D.C.Cir. 1994). Accordingly, those challenging the certification bear the burden of rebutting the government's findings. *Stokes v. Cross*, 327 F.3d 1210, 1215 (D.C.Cir.2003). The Plaintiff has failed to meet its burden.

■ Relying on precedent not binding on this Court, the Plaintiff argues, in essence, that Congressman Ballenger's comment about CAIR was not within the scope of his employment because the statement had no relationship to, or impact on, any of the Congressman's pending legislation. Pl.'s Br. Opp'n FTCA Cert. at 13–14. However, Plaintiff's analysis of the "scope of employment" issue does not comport with the applicable District of Columbia law, which by well established practice is controlling on the issue of the scope of the Congressman's employment. *Haddon v. United States*, 68 F.3d 1420, 1423–24 (D.C.Cir.1995); *Schneider*, 310 F.Supp.2d at 265.

■ Here, the allegedly defamatory statement was made by the Congressman from his office on Capitol Hill. Ballenger Aff. ¶ 8. The District of Columbia law looks to the Restatement (Second) of Agency (1958) to define the scope of an employee's conduct. *Stokes*, 327 F.3d at 1215 (citing *Haddon*, 68 F.3d at 1423–24). Under the Restatement,

> [c]onduct of a servant is within the scope of employment if, but only if: [a] it is of the kind he is employed to perform; [b] it occurs substantially within the authorized time and space limits; [c] it is actu-

ated, at least in part, by a purpose to serve the master; and [d] if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

RESTATEMENT (SECOND) OF AGENCY § 228(1). The District excludes all actions committed solely for servant's own purposes. *Stokes*, 327 F.3d at 1216. However, the District takes an expansive view of what conduct may be deemed within the scope of employment. *Weinberg v. Johnson*, 518 A.2d 985, 988–90 (D.C.1986); *Lyon v. Carey*, 533 F.2d 649 (D.C.Cir.1976); *see also Brown v. Argenbright Sec., Inc.*, 782 A.2d 752, 758 (D.C.2001). Because the parties do not dispute that Congressman Ballenger made the allegedly defamatory comment to the reporter from his congressional office during the workday, and because no force was used, only the first and third criteria are at issue.

With respect to the first criterion, (i.e., whether the conduct was of the kind Congressman Ballenger was employed to perform), the Congressman's actions "must have either been 'of the same general nature as that authorized' or 'incidental to the conduct authorized.'" *Haddon*, 68 F.3d at 1424; RESTATEMENT (SECOND) OF AGENCY, § 228(1)(a). The District's law liberally construes this first prong of the Restatement's respondeat superior analysis. *Stokes*, 327 F.3d at 1216 (citing *Haddon*, 68 F.3d at 1425–26; *Weinberg*, 518 A.2d at 988–90). Moreover, the Supreme Court has noted that members of Congress engage in a "wide range of legitimate 'errands' performed for constituents" including "news releases" and "speeches delivered outside the Congress." *United States v. Brewster*, 408 U.S. 501, 512, 92 S.Ct. 2531, 33 L.Ed.2d 507 (1972). To say the least, speaking to the press is a critical part of the expected and authorized conduct of a United States Congressman. *See*

*id.; Williams v. United States,* 71 F.3d 502, 504 (5th Cir.1995). Accordingly, Congressman Ballenger's proactive comments clarifying the reasons for his marital separation were not only authorized, but a necessary effort, in his judgment, to ensure his continued effectiveness as a legislator both at home and in the Congress. *Cf. Operation Rescue Nat'l v. United States,* 975 F.Supp. 92, 108 (D.Mass.1997) (noting that Senator Kennedy's remarks were not made gratuitously in a speech at a fundraising event, but rather "were made in response to questions posed by the media").

■ Regarding the third criterion, the Court finds that Congressman Ballenger's conduct was actuated, at least in part, by a purpose to serve the master. *See* RESTATEMENT (SECOND) OF AGENCY § 228(1)(c). The Plaintiff's contention that a Congressman's comments must be made in relation to pending legislation to be "within the scope" is overly restrictive, impractical, and based on case law that is not binding on this Court. Pl. Br. Opp'n FTCA Scope Cert. at 13, 14 (citing *Williams,* 71 F.3d 502; *Operation Rescue National v. United States,* 975 F.Supp. 92 (D.Mass. 1997)). Although the courts in *Williams* and *Operation Rescue National* arguably attached some significance to the discussion of pending legislation, the presence or absence of "pending legislation" is not dispositive here because the District considers the range of conduct deemed "actuated, at least in part, to serve the master" expansively. *Weinberg,* 518 A.2d at 992; *Lyon,* 533 F.2d at 652. And perhaps more importantly under District of Columbia law, the conduct need only be motivated *in part* by a purpose to serve the master. RESTATEMENT (SECOND) AGENCY § 228.

Here, Congressman Ballenger acknowledges that his comment was "motivated in significant part by his desire to preserve his ability to continue advancing his legislative agenda in Congress and thereby best serve the interests of his constituents." Ballenger Aff. ¶ 7. He knew and acknowledged that reports of his marital status "would be of concern in [his] socially conservative district," and that "a public scandal related to [his] marital status could undercut [his] ability to carry out these responsibilities, both in the near term and in the long term if it were to become an issue in a future re-election campaign." *Id.* at 7. Because the Congressman was acting, at least in part, for the purpose of preserving his effectiveness, this Court finds he was thus acting within the scope of his employment at the time of the incident in question. Accordingly, it will uphold the Government's certification, and issue an order dismissing Congressman Ballenger and substituting the United States as the nominal Defendant in this case. *Haddon,* 68 F.3d at 1423.

### III.  *IMMUNITY UNDER THE FTCA*

■ Having substituted the United States, the final question before the Court is whether the United States is immune from suit under the FTCA. The doctrine of sovereign immunity bars all suits against the United States except in the event of an explicit statutory waiver of such immunity. *Cox v. Secretary of Labor,* 739 F.Supp. 28, 29 (D.D.C.1990). While the FTCA is one common source for a waiver of sovereign immunity, § 2680(h) of the FTCA specifically excludes "[a]ny claim arising out of assault, battery, false imprisonment, malicious prosecution, abuse of process, *libel, slander,* misrepresentation, deceit, or interference with contract rights" from that waiver. 28 U.S.C. § 2680(h) (emphasis added). Because the sole basis of plaintiff's suit is defamation, the Court concludes that the United States is immune

from suit pursuant to § 2680(h). *See* 28 U.S.C. § 2680(h). Accordingly, since this Court lacks subject matter jurisdiction over this case, Defendant's motion to dismiss is GRANTED with prejudice.

## IV. CONCLUSION

For the reasons described above, the Court grants Defendant's Motion to Dismiss and dismisses the case with prejudice. An appropriate order will issue contemporaneously herewith.