**Robert GARCIA, Plaintiff–Appellant,**

v.

**UNITED STATES of America, Defendant–Appellee.**

No. 92–8490.

United States Court of Appeals, Fifth Circuit.

July 3, 1996.

---

**31.** *See id.* at 1001 (holding that a creditor's *contingent* claim is a debt for purposes of 11 U.S.C. § 547).

**32.** 11 U.S.C. § 547(b)(2).

**33.** *Id.*

Lonnie Ann Roach, Austin, TX, for plaintiff-appellant.

Mollie S. Crosby, Austin, TX, Peter Rolf Maier, United States Department of Justice,

Civil Division, Washington, DC, Ernest Carlos Garcia, Office of the United States Attorney, Austin, TX, Barbara L. Herwig, US Department of Justice, Civil Division, Washington, DC, for defendant-appellee.

Before WISDOM, BARKSDALE and EMILIO M. GARZA, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

On remand from our en banc court, 62 F.3d 126 (1995), under the Westfall Act we must first decide whether, under Texas law, a federal employee acted within the scope of his employment, as so certified by the Attorney General; and second, if the employee was not within the scope, resulting in his being reinstated as defendant, we must decide whether the action remains in federal court. Whether the action so remains involves not only the pertinent provisions of the Westfall Act, but also jurisdictional concerns under Article III of the Constitution. Holding that the agent was not within the scope and that the action must remain in district court, we REVERSE and REMAND.

I.

In early 1991, the Environmental Protection Agency dispatched one of its special agents from its Dallas office to Austin to assist for several days in a criminal investigation. While there, having had several drinks after 10:00 p.m., the agent was involved in an automobile accident with Robert Garcia.

Garcia brought this action in state court against the agent. But, pursuant to the Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub.L. No. 100–694, 28 U.S.C. §§ 2671–80 (the Westfall Act), the Attorney General certified that the agent was acting within the scope of his employment at the time of the accident, resulting in substitution of the United States as defendant and removal to federal court, § 2679(d)(2). (As discussed *infra*, removal was also under, *inter alia*, 28 U.S.C. § 1442.)

The United States moved to dismiss for failure to exhaust administrative remedies, as required by the Federal Tort Claims Act, 28 U.S.C. § 2675(a). Garcia countered by seeking remand to state court, asserting that, at the time of the accident, the agent was not acting within the scope of his employment and, accordingly, was not entitled to FTCA protection. The district court held that it could review the certification; that federal, not state, law controlled the scope question; and that, under either, the agent was acting within the scope. As a result, the action was dismissed for failure to exhaust.

On appeal, 22 F.3d 609 (1994), this panel held that the certification was not subject to judicial review, based upon a statement to that effect in *Mitchell v. Carlson*, 896 F.2d 128, 131 (5th Cir.1990), and a subsequent unpublished opinion which, based on that statement, expressly so held. However, this panel recommended en banc review of this controlling precedent. 22 F.3d at 612.

Our en banc court agreed with the district court that certification is subject to judicial review, pursuant to the intervening holding to that effect in *Gutierrez de Martinez v. Lamagno*, —— U.S. ——, ——, 115 S.Ct. 2227, 2236, 132 L.Ed.2d 375 (1995). 62 F.3d at 127. But, contrary to the district court, our court held that the scope issue is reviewed under state law. *Id.* at 128.

II.

We determine first whether, under Texas law, the EPA agent was acting within the scope of his employment. If he was not, he must be reinstated as defendant, and we must decide whether the action remains in federal court.

A.

We review the scope issue *de novo*. *Williams v. United States*, 71 F.3d 502, 505 (5th Cir.1995). Under Texas law, an employee is within the scope if acting (1) within the general authority given by the employer, (2) in furtherance of the employer's business, and (3) for the accomplishment of the object for which employed. *Robertson Tank Lines, Inc. v. Van Cleave*, 468 S.W.2d 354 (Tex.

1971). There is a presumption that an employee involved in an accident while driving the employer's vehicle is within the scope. *J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632, 636 (Tex.Ct.App.—San Antonio, 1993, *reh'g denied* ). But, on the other hand, an employee involved in an accident while going to or returning from the place of employment is generally not within the scope. *American Gen. Ins. Co. v. Coleman*, 157 Tex. 377, 303 S.W.2d 370, 374 (1957). An exception applies when the employee "undertakes a special mission at the direction of his employer, or performs a service in furtherance of his employer's business with the express or implied approval of his employer". *Id.*, 303 S.W.2d 370.

■ The Government contends that, when the accident occurred, the agent was on a special mission because he was on assignment in Austin. "If found to be on a special mission, the employee will be considered to be in the course and scope of his employment from the time that the employee commences the special mission until its termination, *absent any deviation therefrom for personal reasons.*" *Chevron, U.S.A., Inc. v. Lee*, 847 S.W.2d 354, 356 (Tex.Ct.App.—El Paso, 1993) (emphasis added). The deviation exception is consistent with the general rule that "when the servant turns aside, for however short a time, from the prosecution of the master's work to engage in an affair wholly his own, he ceases to act for the master, and the responsibility for that which he does in pursuing his own business or pleasure is upon him alone". *Texas & Pac. Ry. Co. v. Hagenloh*, 151 Tex. 191, 247 S.W.2d 236, 241 (1952).

■ The factual scenario (provided by the agent's deposition) follows. The agent drove a government-owned vehicle and was provided with a gasoline credit card and per diem for food and lodging; but, the EPA does not reimburse for alcoholic beverages. His work involves irregular, unscheduled hours; during an investigation, his work day is not over until his "head hits the pillow". The agent could not "really say there was a time when [he] was through" with investigative activities on the day of the accident. On the other hand, there was "a point where you might

have said or thought well, let's call it a day, go get something to eat". He did not know the time when he reached that point, "but it was late. It was late in the evening. 10:00." Because the agent was still pursuing investigative activities, he stopped at a restaurant in close proximity; once there, he considered eating, but did not. Next, he stopped at a second restaurant and again did not eat, but had several drinks. It is common for him to not eat if his stomach "doesn't feel right". (Although he did not remember how many drinks he had, his blood alcohol level was at least .2 later that night.)

The agent drove from the restaurant to a pharmacy. When he arrived, he became very ill in the parking lot. He then drove away; but, he did not testify as to where he was going. In fact, he did not "recall even leaving the parking lot"; instead, "the first thing I really remember is the EMS attendant telling me … let me take you to the hospital". Concerning whether he remembered seeing Garcia's car prior to the collision, the agent only "remember[ed] stomping on the brakes and seeing lights".

Noting that "the concept of 'special mission' has escaped full definition in Texas", *Chevron* provides: "However, inherent in any applicable definition is the principle that an employee must be under the control of the employer or acting in furtherance of the employer's business to be on any such 'special mission' ". 847 S.W.2d at 356. Assuming *arguendo* that the agent's entire stay in Austin was a special mission, we conclude that this exception would not apply at the time of the accident, because the agent was then engaged in a personal deviation. *Id.* He apparently had completed work for the day (at the very least, temporarily) and stopped for dinner; he did not eat, but instead consumed alcohol; he then drove to a pharmacy; and his destination when he drove away from the pharmacy and had the collision is unknown.

Therefore, the agent was not within the scope of employment at the time of the accident. As a result, the United States cannot be substituted as defendant; the agent must be reinstated in that capacity.

## B.

Accordingly, we address whether the action must be remanded to state court. This turns, in part, on whether district court retention of the action is outside the jurisdictional boundaries set by Article III of the Constitution. If remand is not required, we are faced also with whether it is discretionary.

The issue at hand turns on § 2679(d)(1)–(3) of the Westfall Act, particularly subparts (2) (Attorney General certifies scope) and (3) (Attorney General refuses to so certify):

(1) Upon certification by the Attorney General that the defendant employee was acting within the scope of his ... employment at the time of the incident out of which the claim arose, any civil action ... commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the ... defendant.

(2) *Upon certification by the Attorney General* that the defendant employee was acting within the scope of his ... employment at the time of the incident ..., any civil action ... commenced upon such claim in a State court *shall be removed* ... at any time before trial by the Attorney General to the district court of the United States.... Such action ... shall be deemed to be an action ... brought against the United States ..., and the United States shall be substituted as the party defendant. *This certification of the Attorney General shall conclusively establish scope of ... employment for purposes of removal.*

(3) In the event that the *Attorney General has refused to certify* scope of ... employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his ... employment. Upon such certification by the court, such action ... shall be deemed to be an action ... brought against the United States ..., and the United States shall be substituted as the ... defendant.... *In the event the peti-*

*tion is filed in a civil action ... pending in a State court, the action ... may be removed ... by the Attorney General to the district court....* *If, in considering the petition, the district court determines that the employee was not acting within the scope of his ... employment, the action ... shall be remanded to the State court.*

(Emphasis added.)

### 1.

Under subpart (d)(2), where, as here, an action is brought in state court against the federal employee and the Attorney General certifies scope, the action "*shall* be removed", "the United States *shall* be substituted", and the "certification ... *shall* conclusively establish scope ... for purposes of removal"; there is no whisper of remand. 28 U.S.C. § 2679(d)(2) (emphasis added). On the other hand, when the action is brought in state court and the Attorney General does not certify scope, but the court does so on request by the employee, subpart (d)(3) states that "the United States *shall* be substituted", the action "*may* [not *shall* ] be removed" by the Attorney General, and "[i]f ... the district court determines that the employee was not acting within the scope ..., the action ... *shall* be remanded to the state court". 28 U.S.C. § 2679(d)(3) (emphasis added).

In short, for an action filed in state court: (1) if the Attorney General certifies scope, subpart (d)(2) mandates removal to federal court, while, on the other hand, if the Attorney General does not so certify but the state court does, removal is discretionary; and (2) after removal, if the employee is not found within the scope, subpart (d)(3) expressly requires remand, but subpart (d)(2), which concerns an initial Attorney General certification, is silent on that point. These contrasts are most instructive.

*Mitchell* has *dictum* that subpart (d)(3) "does not give any indication that Congress left the court without the power to remand for lack of jurisdiction in cases in which the Attorney General *has* issued a certification" under subpart (d)(2). 896 F.2d at 131 n. 2 (emphasis in original). Besides this being

*dictum,* the earlier discussed indication in *Mitchell* that an Attorney General's scope certification is not reviewable was rejected by *Lamagno.* Accordingly, we write on a clean slate.

Removal was not a factor in *Lamagno;* it was a diversity action filed in district court. At issue was reviewability *vel non* of the Attorney General's certification. As discussed, upon such certification in state court, subpart (d)(2) gives three clear commands: the action "shall be removed"; "the United States shall be substituted"; and the certification "shall conclusively establish scope of . . . employment for purposes of removal". In holding certification reviewable (plurality opinion part III, —— U.S. at ——, 115 S.Ct. at 2236; that part was joined by Justice O'Connor, *id.* at ——, 115 S.Ct. at 2237), the Court was faced with the third clear command: certification "shall conclusively establish scope . . . for purposes of removal". Therefore, as hereinafter discussed, it reasoned that this command was final, or nonreviewable, but that the "shall be substituted" command was not. It stated in part III:

> Because the statute is reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review and that mechanical judgments are not the kind federal courts are set up to render. Under our reading, the Attorney General's certification that a federal employee was acting within the scope of his employment—a certification the executive official, in cases of the kind at issue, has a compelling interest to grant—does not conclusively establish as correct the substitution of the United States as defendant in place of the employee.

*Id.* at ——, 115 S.Ct. at 2236.

Upon concluding that the "shall be substituted" command was reviewable, the plurality was left with the resulting finality, or nonreviewability, accorded the "shall conclusively establish scope . . . for purposes of removal" command. Along that line, plurality opinion part IV (which Justice O'Connor did not join) responded to the assertion that,

upon rejection of the certification, remand to state court would be precluded, resulting in an action remaining in district court without jurisdiction, where there was no alternative basis for it, such as diversity. *Id.* For this hypothetical, part IV reasoned that there would be no "grave" Article III problem as a result of the action so remaining because "there *was* a nonfrivolous federal question, certified by the . . . Attorney [General], when the case was removed to federal court". *Id.* (emphasis in original).

The modifier "grave" was used similarly in *Mesa v. California,* 489 U.S. 121, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989), which concerned the requirement that "[f]ederal officer removal under . . . § 1442(a) must be predicated upon averment of a federal defense." *Id.* at 139, 109 S.Ct. at 970. In rejecting "[t]he Government's view, which would eliminate the federal defense requirement", *id.* at 136, 109 S.Ct. at 968, the *Mesa* Court stated: "Adopting . . . [that] view would eliminate the substantive Art. III foundation of § 1442(a)(1) and unnecessarily present *grave* constitutional problems." *Id.* at 137, 109 S.Ct. at 969 (emphasis added). The obvious parallels between similar concerns for removal and remand under §§ 1442 and 1447 on the one hand and under the Westfall Act on the other are discussed *infra.*

As noted, Justice O'Connor joined all but part IV of the *Lamagno* plurality opinion. —— U.S. at ——–——, 115 S.Ct. at 2237–38. One reason given for not joining that part was because it "all but conclusively resolves a difficult question of federal jurisdiction"—the one presented here—that was not at issue in *Lamagno. Id.* at ——, 115 S.Ct. at 2237. The dissent by Justice Souter, joined by the Chief Justice and Justices Scalia and Thomas, concluded that the Attorney General's certification is not reviewable, thus avoiding the Article III issue addressed in part IV. *Id.* at ——–——, 115 S.Ct. at 2238–43.

■ Critical, it seems, to *Lamagno* is the "sound general rule that Congress is deemed to avoid redundant drafting". *Id.* at ——, 115 S.Ct. at 2241 (Souter, J., dissenting) (*citing Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 837, 108 S.Ct.

2182, 2189–90, 100 L.Ed.2d 836 (1988), and *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 469 U.S. 189, 196–97, 105 S.Ct. 658, 662–63, 83 L.Ed.2d 582 (1985)); *see* —— U.S. at ——, 115 S.Ct. at 2238 (O'Connor, J., concurring). Under this general rule "a statutory interpretation that would render an express provision redundant was probably unintended and should be rejected". *Id.* at ——, 115 S.Ct. at 2241 (Souter, J., dissenting).

For an action removed under subpart (d)(3) (state court, not Attorney General, certified scope), upon a federal court rejecting the certification, the last sentence in that subpart—that the action "shall be remanded"—would be rendered redundant if remand was already required. Restated, under this general rule of construction, the "shall be remanded" provision in subpart (d)(3) is necessary in order for remand to be required.

■ Therefore, because this same provision is not found in subpart (d)(2), remand is not required for the scenario covered by that subpart—Attorney General certification rejected after removal. This conclusion flows from, among other things, a rule of construction parallel to the redundancy rule. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion". *Gozlon–Peretz v. United States,* 498 U.S. 395, 404, 111 S.Ct. 840, 846–47, 112 L.Ed.2d 919 (1991) (internal quotation marks omitted) (quoting *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983)). Congress, by requiring remand in subpart (d)(3), obviously knew how to require it for (d)(2); it did not do so. That silence is deafening for purposes of our analysis.

■ Moreover, we conclude that, in addition to remand not being required for subpart (d)(2), it is not even permitted; the action must remain in district court. This reading is in harmony with removal being required under subpart (d)(2), when scope is certified by the Attorney General, but optional under subpart (d)(3), when it is not. It comports with Congress' clear desire that, if the Attorney General certifies scope, the ac-

tion is to be conducted in federal, not state, court, as reflected in the subpart (d)(2) "shall conclusively establish scope ... for purposes of removal" command.

This reading is consistent also with part IV of *Lamagno,* as well as with footnote 10 in part III, joined by Justice O'Connor. That note explained that "Congress likely omitted [a] provision ... [in subpart (d)(2) ] to *authorize* remands, because it had decided to foreclose needless shuttling of a case from one court to another—a decision evident also in the Westfall Act language making certification 'conclusiv[e] ... for purposes of removal' ". —— U.S. at —— —— n. 10, 115 S.Ct. at 2235–36 n. 10 (emphasis added). By retaining the action in federal court, Congress precluded the dilemma of it being sent back and forth between federal and state court if, later during the case, the scope decision is changed based on additional evidence. Of course, the same situation could develop after a required subpart (d)(3) remand, where the Attorney General did not certify scope. But, to state the obvious, Congress elected to expressly require remand in that subpart; it did not do so in (d)(2). Under the (d)(2) scenario, scope was certified by the Attorney General. The (d)(2) "conclusively establish" command reflects, again, the considerable weight given by the Congress to that certification.

Finally, the *Lamagno* dissent seems also to be of the view that a federal court must retain the action if, as *Lamagno* held, the Attorney General's certification is reviewable, and if it is rejected, because the dissent is concerned that an Article III jurisdiction problem arises in that situation. (As discussed *supra,* this is the point addressed in part IV of the *Lamagno* plurality opinion.) Needless to say, this problem would arise only if the action is not remanded to the state court. Furthermore, the dissent notes that

[t]he Court recognizes that there is nothing equivocal about the Act's provision that once a state tort action has been removed to a federal court after a certification by the Attorney General, *it may never be remanded to the state system:* "certification of the Attorney General shall conclu-

sively establish scope of office or employment for purposes of removal," 28 U.S.C. § 2679(d)(2).

*Id.* at ——, 115 S.Ct. at 2239 (Souter, J., dissenting) (emphasis added).

### 2.

Even though eight, if not all nine, members of the *Lamagno* Court appear to agree that the Westfall Act requires a district court to retain the action upon rejecting the Attorney General's certification, *Lamagno* leaves undecided whether that requirement exceeds Article III jurisdiction. As noted, the plurality finds that this Article III problem is not "a grave one", *id.* at ——, 115 S.Ct. at 2236 (plurality); but, the concurrence states that the Court "should not resolve that question until it is necessary for us to do so", *id.* at ——, 115 S.Ct. at 2237 (O'Connor, J., concurring), and the dissent finds that "there is a serious problem ... in requiring a federal district court, after rejecting the Attorney General's certification, to retain jurisdiction over a claim that does not implicate federal law in any way", *id.* at ——, 115 S.Ct. at 2239 (Souter, J., dissenting).

We agree with the *Lamagno* plurality that, because of the Attorney General's certification, there is an initial colorable federal question. *Id.* at —— – ——, 115 S.Ct. at 2236–37. Accordingly, we agree likewise that there is no "grave" Article III problem in a district court retaining jurisdiction after rejecting the Attorney General's certification:

> Whether the employee was acting within the scope of his federal employment is a significant federal question—and the Westfall Act was designed to assure that this question could be aired in a federal forum.... Because a case under the Westfall Act thus "raises [a] questio[n] of substantive federal law at the very outset," it "clearly 'arises under' federal law, as that term is used in Art. III."

*Id.* at ——, 115 S.Ct. at 2236–37 (plurality) (quoting *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493, 103 S.Ct. 1962, 1971, 76 L.Ed.2d 81 (1983)). *See Verlinden*, 461 U.S. at 491 & 497, 103 S.Ct. at 1970 & 1973 (Foreign Sovereign Immunities Act grant to "federal courts [of] subject-matter jurisdiction over ... civil actions by foreign plaintiffs against foreign sovereigns where the rule of decision may be provided by state law" is within bounds of Article III arising under clause).

We agree also with the *Lamagno* plurality that "considerations of judicial economy, convenience and fairness to litigants make it reasonable and proper for the federal forum to proceed beyond the federal question to final judgment once it has invested time and resources on the initial scope-of-employment contest". *Id.* at ——, 115 S.Ct. at 2237 (plurality) (internal quotation marks and brackets omitted) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966)); *see* 28 U.S.C. § 1367 (supplemental jurisdiction).

Accordingly, we hold that, for subpart (d)(2), upon rejection of the Attorney General's certification, the district court retains jurisdiction and may not remand the action to state court. While the *Lamagno* dissent expressed concern that this provision of the Westfall Act "must at the very least approach the limit" of federal jurisdiction, we conclude that it does not "cross the line". —— U.S. ——, 115 S.Ct. at 2239 (Souter, J., dissenting).

### 3.

As was the case before *Lamagno*, the circuits are split on the issue at hand. Obviously, *Lamagno*'s recent construction of the Westfall Act casts new light on most of these decisions. Post–*Lamagno*, only two circuits have ruled on this issue; they also reach opposite results. (*Heuton v. Anderson*, 75 F.3d 357, 361 (8th Cir.1996) noted that the issue was left open by *Lamagno*, but did not reach it.)

In requiring remand to state court, the D.C. Circuit, in a post-*Lamagno* split decision in *Haddon v. United States*, 68 F.3d 1420, 1426–27 (D.C.Cir.1995), infers the power under subpart (d)(2) to remand from the express power to do so in subpart (d)(3), and reasons that

> [a]llowing federal courts to remand cases to state courts under both [subparts] ... would ... neither erase the differences

between these two [subparts] nor render Attorney General certifications meaningless. To the contrary, the essential benefit of the certification process—guaranteeing that scope of employment determinations are made in a federal forum—would remain.

*Id.* at 1426. The *Haddon* majority found support in the fact that its holding avoided the constitutional question of whether a district court was retaining an action without Article III jurisdiction, the point troubling the *Lamagno* concurrence and dissent. *Id.* at 1427. *Haddon* adopts the pre-*Lamagno* reasoning of *Nasuti v. Scannell,* 906 F.2d 802 (1st Cir.1990), which requires remand.

In the Eleventh Circuit, pursuant to pre-*Lamagno* decisions, remand is discretionary. *Nadler v. Mann,* 951 F.2d 301, 306 n. 9 (11th Cir.1992), stated that, for an action removed, as here, under § 2679(d)(2) and § 1442, where the employee was not within the scope, "judicial economy would not be compromised if the district court remanded the case to state court", and held that remand is discretionary. *See Green v. Hill,* 954 F.2d 694, 698 (11th Cir.1992), *withdrawn & superseded in part on reh'g,* 968 F.2d 1098 (11th Cir.1992). (Earlier, the Eleventh Circuit required remand, but quickly vacated that requirement. *See S.J. & W. Ranch, Inc. v. Lehtinen,* 913 F.2d 1538, 1544, *modified,* 924 F.2d 1555 (11th Cir.1991), *cert. denied,* 502 U.S. 813, 112 S.Ct. 62, 116 L.Ed.2d 37 (1991).)

Under a pre-*Lamagno* holding, the Third Circuit does not permit remand. *Aliota v. Graham,* 984 F.2d 1350, 1351 (3d Cir.), *cert. denied,* 510 U.S. 817, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993), concluded, based on the "plain language" of the subpart (d)(2) "conclusively establish" command, that "the district court has no authority to remand the case on the ground that the . . . certification was erroneous". *Id.* at 1356.

In several of the pre-*Lamagno* cases, also blended into the decisional mix were initial remand orders by the district court and the general prohibition under § 1447(d) against appellate review of such orders. *See, e.g., Aliota,* 984 F.2d at 1354–57; *Nasuti,* 906 F.2d at 808–11; *Mitchell,* 896 F.2d at 130–31.

This factor, considered with the remand provision of § 1447(c), was present in the Fourth Circuit's pre-*Lamagno* decision in *Jamison v. Wiley,* 14 F.3d 222, 237–39 & n. 18 (4th Cir.1994), which held, *inter alia,* that, for an action properly removed under § 1442(a)(1) as well as under the Westfall Act, a federal court lacks authority under § 1447(c) to remand to state court. Citing the above referenced *Mesa v. California,* 489 U.S. 121, 139, 109 S.Ct. 959, 970, 103 L.Ed.2d 99 (1989) (§ 1442(a) removal "must be predicated upon averment of a federal defense"), *Jamison* held that, because the removal petition raised a "colorable federal defense" (immunity under the Westfall Act), the action was "transform[ed from an] otherwise nonremovable state-law action into one that falls within the federal court's 'arising under' jurisdiction." 14 F.3d at 239.

Post–*Lamagno,* in *Mangold v. Analytic Services, Inc.,* 77 F.3d 1442, 1450 (4th Cir. 1996), in which the district court had ordered remand to state court, the Fourth Circuit held that, because "the effect recognized in *Jamison* surely must be the same" for actions removed only under the Westfall Act, remand is not permitted. *Id.* at 1453.

4.

Again, these circuits may soon reach results different from those prior to *Lamagno.* In any event, the "arising under" basis for jurisdiction in *Jamison* parallels the later analysis in part IV of *Lamagno,* which, as noted, did not involve removal and was, instead, a diversity action filed in district court. But, as also discussed, the part IV analysis assumed that the Westfall Act was the only jurisdictional basis.

As also noted, in addition to the Westfall Act, the action at hand, as in *Jamison,* was removed under, *inter alia,* § 1442. The Government now relies upon *Lamagno* in asserting that the Attorney General's certification raises a federal question, but also now relies upon *Jamison* (and previously, *Mesa* as well) in asserting that, if "a federal defense supports removal jurisdiction, the rejection of the defense does not divest a federal court's jurisdiction over the removed action".

In district court (1991–92), the Government did not present this jurisdictional contention which found support subsequently in *Jamison* (1994). Be that as it may, because of the plain language and structure of § 2679(d)(1)–(3), especially as read in the light of *Lamagno*, we need not seek jurisdictional support under the § 1442 scenario. As discussed, the Westfall Act, without more, requires that, upon the Attorney General's certification being rejected in a removed action, the action nevertheless remains in district court. This results in the same ultimate concerns about crossing the line of Article III jurisdiction that are present under the § 1442(a) scenario. But, the Westfall Act scenario provides a far more sound basis for jurisdiction than does that for § 1442. The Westfall Act basis is grounded in what we read as a clear and constitutional directive by the Congress that removed actions with an Attorney General certification are to remain in federal court.

### III.

Because the agent was not acting within the scope of his employment at the time of the accident, he must be reinstated as defendant; and, the district court must retain this action. Accordingly, we REVERSE and REMAND to the district court for further proceedings.

REVERSED and REMANDED.

EMILIO M. GARZA, Circuit Judge, specially concurring:

Because I agree that the EPA agent was not acting within the scope of his employment at the time of the accident, I concur in Part II.A of the majority's opinion.

I concur, however, only in the judgment of Part II.B. I agree that remand is not permitted under subpart (d)(2), and that the action must therefore remain in district court. 28 U.S.C. § 2679(d)(2). I do so, however, not for the tortuous reasoning set out in Part II.B, but because I believe that Congress, by the plain wording of § 2679 (entitled "Exclusiveness of remedy"), mandated that actions against an employee of the fed-

eral government, when certified by the attorney general, be brought in the United States courts, with the United States as the proper defendant. Conversely, Congress never intended to create jurisdiction in a federal court for a state action against an employee of the United States. *See* § 2679(d)(3). We are thus squarely presented in this case with the "difficult question of federal jurisdiction" that was not decided by the Supreme Court in *Lamagno*. *Gutierrez de Martinez v. Lamagno*, —— U.S. ——, ——, 115 S.Ct. 2227, 2237, 132 L.Ed.2d 375 (1995) (O'Connor, J., concurring in part).

Unlike *Lamagno*, where the parties' diverse citizenship provided an independent basis for maintaining the case in federal court, there is no remaining basis for federal jurisdiction in this case once we have rejected the scope certification. The majority is apparently comfortable to conclude, with the plurality in *Lamagno*, that because there is an "initial colorable federal question" at the time of removal and substitution, there is no "grave" Article III problem in having the district court retain the case. *Maj. op. at 324–25; see also Lamagno*, —— U.S. at ———–——, 115 S.Ct. at 2236–37 (plurality opinion). I am not as comfortable. As the dissent in *Lamagno* put it, this line of reasoning is "tantamount to saying the authority to determine whether a Court has jurisdiction over the cause of action supplies the very jurisdiction that is subject to challenge. It simply obliterates the distinction between the authority to determine jurisdiction and the jurisdiction that is the subject of the challenge...." *Lamagno*, —— U.S. at ——, 115 S.Ct. at 2240 (Souter, J., dissenting). A challenge to the scope certification is necessarily a challenge to the court's jurisdiction. *See id.*

Despite the majority's arguments to the contrary, I remain convinced that the result we have reached today "at the very least must approach the limit, if it does not cross the line" in defining the breadth of federal court jurisdiction authorized by the "arising under" Clause of Article III of the Constitution.[1] *Id.* at ——, 115 S.Ct. at 2239 (Souter,

---

1. "The judicial Power shall extend to all Cases,     in Law and Equity, arising under this Constitu-

J., dissenting). I refuse to believe that Congress intended this troubling result; I must instead conclude that Congress, in making the attorney general's certification conclusive for purposes of removal, intended that the scope certification, which provides the basis for federal jurisdiction, would remain unreviewable—thus also conferring exclusive jurisdiction under § 1346(b). These § 2679 issues—certification and jurisdiction—are inherently symbiotic.

Accordingly, I write to express my concern regarding the Article III issue raised by this case, and to respectfully urge the Supreme Court to revisit its determination of Congressional intent allowing review of the attorney general's scope certification under the Westfall Act in light of the troubling result the *Lamagno* opinion has produced in this case.

## I

Despite *Lamagno*'s holding, I continue to believe that Congress did not intend for the attorney general's certification of scope of employment to be reviewable by the courts. I begin with the premise that there is "no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." *United States v. Sosa*, 997 F.2d 1130, 1132 (5th Cir.1993) (quoting *United States v. American Trucking Ass'ns*, 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940)). It is also "incumbent upon us to read the statute to eliminate [serious con-

stitutional doubts] so long as such a reading is not plainly contrary to the intent of Congress." *United States v. X–Citement Video, Inc.*, 513 U.S. ——, ——, 115 S.Ct. 464, 472, 130 L.Ed.2d 372 (1994); *Mesa v. California*, 489 U.S. 121, 137, 109 S.Ct. 959, 969, 103 L.Ed.2d 99 (1989).

The plain language of each of the five subsections of § 2679(d) confirms the unreviewability of the scope certification. Section 2679(d)(1) states that after certification by the attorney general: (1) the United States shall be substituted for the defendant employee in any litigation arising out of the alleged incident and *commenced in federal court*, and (2) any such litigation shall be treated as a suit originally brought against the United States.[2] Section 2679(d)(2) provides that after certification by the attorney general: (1) any litigation arising out of the alleged incident and *commenced in state court* shall be removed to the federal district court before the United States is substituted as defendant, and (2) the scope of employment issue shall be conclusively resolved for the purposes of removal.[3] Section 2679(d)(3) provides that if the attorney general *denies* certification: (1) the federal district court *may review that determination* and certify the employee if it chooses, (2) any litigation commenced in state court shall be removed to the federal district court if a petition for court certification is filed, and (3) any litigation so removed will be remanded to state court if the petition is denied.[4] Section

---

tion, the Laws of the United States, and Treaties made, or which shall be made, under their Authority...." U.S. Const., Art. III, § 2, cl. 1.

**2.** Section 2679(d)(1) provides in full that:

Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding *commenced upon such claim in a United States district court* shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

28 U.S.C. § 2679(d)(1) (emphasis added).

**3.** Section 2679(d)(2) provides in full that:

Upon certification by the Attorney General that the defendant employee was acting within the

scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding *commenced upon such a claim in a State court* shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place in which the action or proceeding is pending. Such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. *This certification of the Attorney General shall conclusively establish scope of office or employment for purposes of removal.*

28 U.S.C. § 2679(d)(2) (emphasis added).

**4.** Section 2679(d)(3) provides in full that:

*In the event that the Attorney General has refused to certify scope of office or employment*

2679(d)(4) states that any suit brought against the United States pursuant to § 2679(d) shall be subject to 28 U.S.C. § 1346(b),[5] and § 2679(d)(5) concerns the timeliness of claims brought under § 2679(d).[6] Nowhere in the statute is judicial review of the attorney general's certification mentioned.

## A

The language of §§ 2679(d)(1) and (d)(4)[7] plainly states that after certification by the attorney general, courts are *required* to substitute the United States as defendant and proceed with the case as if it had originally been filed against the United States. Section 2679(d)(1) provides that: "Upon certification by the Attorney General ... any civil action or proceeding commenced upon such claim in a United States district court *shall* be deemed an action against the United States...."[8] Similarly, § 2679(d)(4) provides that: "Upon certification, any action or proceeding ... *shall* proceed in the same manner as any action against the United States filed pursuant to section 1346(b) of this title...."[9] I read the word "shall" as

mandatory language, placing the substitution of the United States as defendant outside the district court's discretion.

## B

The remaining provisions of § 2679(d), if read in accordance with the rules of statutory construction, similarly reveal that Congress did not intend the attorney general's certification to be reviewable by the courts.

First, the language in § 2679(d)(2) that makes the attorney general's certification nonreviewable for purposes of removal is the logical extension of the language in § 2679(d)(1) and § 2679(d)(4) that precludes federal court review of the attorney general's certification. Significantly, the two subsections concern different courts and procedural stages, and the different roles certification plays in each. While § 2679(d)(1) applies exclusively to suits commenced "in a United States district court,"[10] § 2679(d)(2) applies only to suits commenced "in a State court."[11] Consequently, § 2679(d)(1) governs litigation "commenced" in a federal court,[12] while § 2679(d)(2) governs the procedure by which suits reach a federal court—namely, remov-

---

*under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment.* Upon such certification by the court, such action or proceeding shall be deemed to be an action or proceeding brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. A copy of the petition shall be served upon the United States in accordance with the provisions of Rule 4(d)(4) of the Federal Rules of Civil Procedure. In the event the petition is filed in a civil action or proceeding pending in a State court, the action or proceeding may be removed without bond by the Attorney General to the district court of the United States for the district and division embracing the place in which it is pending. *If, in considering the petition, the district court determines that the employee was not acting within the scope of his office or employment, the action or proceeding shall be remanded to the State court.*
28 U.S.C. § 2679(d)(3) (emphasis added).

**5.** Section 2679(d)(4) provides in full that:
Upon certification, any action or proceeding subject to paragraph (1), (2), or (3) shall proceed in the same manner as any action against the United States filed pursuant to section 1346(b) of this title and shall be subject to the

limitations and exceptions applicable to those actions.
28 U.S.C. § 2679(d)(4).

**6.** Section 2679(d)(5) provides in full that:

Whenever an action or proceeding in which the United States is substituted as the party defendant under this subsection is dismissed for failure first to present a claim pursuant to section 2675(a) of this title, such a claim shall be deemed to be timely presented under section 2401(b) of this title if—(A) the claim would have been timely had it been filed on the date the underlying civil action was commenced, and (B) the claim is presented to the appropriate Federal agency within 60 days after dismissal of the civil action.
28 U.S.C. § 2679(d)(5).

**7.** *See supra* notes 2 & 5.

**8.** 28 U.S.C. § 2679(d)(1) (emphasis added).

**9.** *Id.* § 2679(d)(4) (emphasis added).

**10.** 28 U.S.C. § 2679(d)(1). *See supra* note 2.

**11.** 28 U.S.C. § 2679(d)(2). *See supra* note 3.

**12.** 28 U.S.C. § 2679(d)(1). *See supra* note 2.

al.[13] Finally, under § 2679(d)(1), certification causes the substitution of the United States as defendant; while under § 2679(d)(2), in addition to that substitution, certification also causes the state court to lose jurisdiction over the suit. Because neither § 2679(d)(1) nor (d)(4) addresses removal, Congress found it necessary in § 2679(d)(2) to extend expressly and explicitly the conclusiveness of the attorney general's certification to removal. Thus, § 2679(d)(2) states that certification by the attorney general "shall conclusively establish scope of office or employment for purposes of removal." [14]

Some pre-*Lamagno* opinions made the argument that the plain language in § 2679(d)(2) renders the plain language of § 2679(d)(1) ambiguous.[15] The reasoning of this argument is flawed because the two subsections can and should be read in agreement. *See Gallenstein v. United States,* 975 F.2d 286, 290 (6th Cir.1992). When construing separate provisions of a statute, one general and one more particular, the more specific provision should only be given exclusive effect if the two provisions cannot be reconciled. *Id.* The language in § 2679(d)(1) is limited to "any civil action or proceeding commenced upon such claim *in a United States district court;*" [16] accordingly, § 2679(d)(2), the subsection governing those procedural determinations made *before* a claim reaches the district court, expressly and logically extends the nonreviewability of the attorney general's certification to the removal process.[17] Sections 2679(d)(1) and (d)(2), instead of being ambiguous, are rather consistent and complementary, given the different courts in which suits governed by § 2679(d) may be filed.

Second, § 2679(d)(3)'s provision for district court determination of scope demonstrates that if Congress had intended for the district court to consider scope after the attorney general's certification, it knew how to do so.[18] Section 2679(d)(3) provides for limited judicial review of the attorney general's determination of scope by allowing the defendant employee to "petition the court to find and certify that the employee was acting within the scope of his office or employment" if "the Attorney General has refused." 28 U.S.C. § 2679(d)(3). Accordingly, it provides that if "the district court determines that the employee was not acting within the scope of his office or employment, the action or proceeding shall be remanded to the State court." *Id.* § 2679(d)(3). The fact that Congress included instructions for the district court to remand should it determine an employee was not within the scope of employment in § 2679(d)(3), but not in § 2679(d)(1), further evidences Congress's intent that the attorney general's certification be conclusive. *See United States v. Lamere,* 980 F.2d 506, 513 (8th Cir.1992) (holding that where language is included in one section of a statute but not another, it is presumed that exclusion was purposeful).[19]

Section 2679(d) provides a clear, cohesive, consistent, and comprehensive account of the reviewability of the attorney general's determinations of scope; and whether the plain language of § 2679(d)(1) is taken alone or in conjunction with that of §§ 2679(d)(2), (d)(3), and (d)(4), the statute does not in my opinion permit judicial review of the attorney general's decision to grant certification.

---

**13.** 28 U.S.C. § 2679(d)(2) (requiring suits commenced in state courts "be removed without bond at any time before trial by the Attorney General to the district court of the United States"). *See supra* note 3.

**14.** 28 U.S.C. § 2679(d)(2). *See supra* note 3.

**15.** For example, the Second Circuit suggested that the mandatory removal language in § 2679(d)(2) demonstrated that: "Had Congress intended to render the certification conclusive for purposes other than removal, it knew how to do so." *McHugh v. University of Vermont,* 966 F.2d 67, 72 (2d Cir.1992).

**16.** 28 U.S.C. § 2679(d)(1) (emphasis added). *See supra* note 2.

**17.** *See supra* note 3.

**18.** *See supra* note 4.

**19.** Congress would not explicitly provide in § 2679(d)(3) for district court review of the attorney general's failure to certify if it believed that federal district court review of the attorney general's determination of scope would be assumed, if not explicitly stated.

## II

Although essentially unaddressed by the Court in *Lamagno*, I believe that the statute's legislative history fully supports the determination that the attorney general's certification is unreviewable. I make this assertion even though prior to *Lamagno*, a number of circuits reached the opposite conclusion based on their reading of the statute's legislative history. However, these circuit opinions based their conclusions primarily on the views of a single legislator, as expressed in his questions to witnesses testifying at a House subcommittee hearing on a bill that was never enacted.[20]

### A

The subcommittee hearings that these courts relied as a foundation for their interpretation of § 2679(d) do not authoritatively support the proposition that the attorney general's certification is reviewable by the federal district court for two reasons.[21] The testimony from the hearings on H.R. 4358,[22] the bill that preceded H.R. 4612,[23] is both ambiguous and contradictory. Representative Barney Frank, the sponsor of H.R. 4358, seemed to believe that under that bill, plaintiffs would have some method of "contesting certification" that was not available to defendant employees:

> It seems to me the certification is a *weapon against the employee*, not against the plaintiff, because the plaintiff would still have the right to contest the certification if they thought the Attorney General were certifying without justification.

*Hearings, supra* note 20, at 128 (statement of Rep. Frank) (emphasis added). Although Representative Frank's comment has been frequently cited as support for judicial re-

---

**20.** *See Legislation to Amend the Federal Tort Claims Act: Hearing on H.R. 4358, H.R. 3872, and H.R. 3083 Before the Subcomm. on Admin. Law and Governmental Relations of the House Comm. on the Judiciary*, 100th Cong., 2d Sess. (1988) [hereinafter *Hearings*].

**21.** The Second, Third, Sixth, Seventh, Ninth, and Eleventh Circuits relied upon the same hearings in determining whether or not the attorney general's certification is reviewable. *See McHugh v. University of Vt.*, 966 F.2d 67 (2d Cir.1992); *Melo v. Hafer*, 912 F.2d 628 (3d Cir.1990), *aff'd*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Arbour v. Jenkins*, 903 F.2d 416 (6th Cir.1990); *Hamrick v. Franklin*, 931 F.2d 1209 (7th Cir.), *cert. denied*, 502 U.S. 869, 112 S.Ct. 200, 116 L.Ed.2d 159 (1991); *Meridian Int'l Logistics, Inc. v. United States*, 939 F.2d 740 (9th Cir.1991); *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538 (11th Cir.1990), *cert. denied*, 502 U.S. 813, 112 S.Ct. 62, 116 L.Ed.2d 37 (1991).

**22.** The section of H.R. 4358 that contained proposed revisions to § 2679(d) read:

> Section 2679(d) of title 28, United States Code, is amended to read as follows:
> (d)(1) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding heretofore or hereafter commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.

(2) Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place wherein it is pending. Such action shall be deemed an action brought against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant. This certification of the Attorney General shall conclusively establish scope for purposes of removal.

(3) Upon certification, any actions subject to paragraph (1) or (2) shall proceed in the same manner as any action against the United States filed pursuant to section 1346(b) of this title and shall be subject to the limitations and exceptions applicable to those actions.

(4) Whenever an action in which the United States is substituted as the party defendant under this subsection is dismissed for failure to present a claim pursuant to section 2675(a) of this title, such a claim shall be deemed to be timely presented under section 2401(b) of this title if (A) the claim would have been timely had it been filed on the date the underlying civil action was commenced, and (B) the claim is presented to the appropriate Federal agency within 60 days after dismissal of the civil action.

H.R. 4358, 100th Cong., 2d Sess. § 6 (1988).

**23.** H.R. 4612 was the bill that ultimately amended § 2679(d). *See infra* note 35.

view,[24] it demonstrates more than anything else that he was not yet clear on the procedural complexities of the bill's provisions. The bill under consideration at the time of the hearings *contained no provisions for court review* of the attorney general's determinations of scope,[25] not even those that appear in the current § 2679(d)(3),[26] and thus could not provide for disparate treatment of plaintiffs' and defendants' challenges to those determinations.

Robert Willmore, the Department of Justice representative who has been cited as "understanding that the certification issue would be subject to judicial review," *Lehtinen*, 913 F.2d at 1541, gave the following testimony:

> I think the certification is the easiest way to get the scope issue *resolved* without having potentially years of litigation over whether an act was within scope.

*Hearings, supra* note 20, at 128 (testimony of Robert Willmore) (emphasis added). At least in this statement, Willmore appears to be under the impression that the attorney general's determinations of scope would not be subject to review.[27]

Lois Williams, a union representative who has also been cited as "understanding that the certification issue would be subject to review," *Lehtinen*, 913 F.2d at 1541, testified:

> But let me just say that there is something about the Attorney General's having certified. *It is formal. It is a determination.* The question of deference to the Attorney General comes in.

*Hearings, supra* note 20, at 197 (testimony of Lois Williams) (emphasis added). Williams believed that "this proposal purports to make [the attorney general's] certification *conclusive*,"[28] as is evidenced by her statement:

The proposed amendments are said to be similar to a certification procedure employed in the Federal Driver's Act [the old § 2679], an amendment to the FTCA. There is, however, a critical difference. The Attorney General's certification under the Federal Drivers Act, is, at least in some degree, reviewable by a court. *The proposed legislation, however, purports to remove any review.* It states: "This certification of the Attorney General shall conclusively establish scope of office or employment for the purposes of removal."[29]

It is clear that the hearings on H.R. 4358 do not support the contention that its participants understood the attorney general's certification to be subject to district court review. *See Patterson v. Shumate*, 504 U.S. 753, 760–62 & n. 4, 112 S.Ct. 2242, 2248 & n. 4, 119 L.Ed.2d 519 (1992) (stating that where the language of a statute is clear, that language, rather than "isolated excerpts from the legislative history," should be followed).

**B**

Moreover, these scattered statements from congressional subcommittee hearings are not the most authoritative non-statutory evidence of legislative intent. In an analysis of legislative history, a court should begin with the most recent statement of authority and work backwards through the legislative record. *In re Timbers of Inwood Forest Assocs., Ltd.*, 793 F.2d 1380, 1396 (5th Cir.1986) (ranking text of the enacted bill as most authoritative, followed by post-hearing amendments and committee reports), *modified on reh'g on other grounds*, 808 F.2d 363 (5th Cir.1987), *aff'd, United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740

24. *See, e.g., Melo*, 912 F.2d at 642; *Arbour*, 903 F.2d at 421; *Hamrick*, 931 F.2d at 1209; *Meridian Int'l Logistics, Inc.*, 939 F.2d at 744; *Lehtinen*, 913 F.2d at 1541.

25. *See* H.R. 4358, *supra* note 22.

26. *See supra* note 4.

27. To the extent that Willmore's testimony indicates that he believed that the certification could be contested, Willmore's belief was also premised on the erroneous assumption, held by Repre-

sentative Frank, that plaintiffs could bring a special challenge to the scope determination. *See Hearings, supra* note 20, at 128 (testimony of Robert Willmore).

28. *Hearings, supra* note 20, at 177 (statement of Lois Williams) (emphasis added).

29. *Id.* at 184 (statement of Lois Williams) (emphasis added).

(1988). A proper examination of the legislative history, beginning with H.R. 4612's amendments to § 2679(d) in 1988, demonstrates that Congress intended the attorney general's certification to be conclusive.

The 1988 amendments deleted from § 2679(d) language that expressly provided for district court review of the attorney general's certification.[30] Prior to its amendment in 1988, § 2679(d) was not divided into subsections and dealt only with certification by the attorney general.[31] The pre–1988 § 2679(d) (the "old § 2679(d)") consisted of just two sentences.[32] The first provided that after certification, the attorney general could remove to a federal district court any litigation on the incident being conducted before a state court, and that the United States should then be substituted as defendant.[33] In its second sentence, the old § 2679(d) provided for *federal district court review of the attorney general's certification* and for remand to the state court if the certification was found baseless.[34]

In 1988, legislation in the House of Representatives proposed amending the old

§ 2679(d).[35] Under H.R. 4612, § 2679(d) was to be divided into four subsections.[36] The first subsection provided that after certification by the attorney general, the United States shall replace the employee as defendant in all litigation on the incident commenced in a federal court.[37] The second subsection provided that after certification by the attorney general, any litigation being conducted on the incident shall be removed to the federal district court.[38] The third subsection provided that the attorney general's *refusal* to certify was reviewable by a federal district court.[39] Finally, the fourth subsection provided that upon certification, any action subject to the first three paragraphs would proceed in the same manner as any action against the United States filed pursuant to 28 U.S.C. § 1346(b).[40]

Thus, H.R. 4612 proposed several important amendments to the old § 2679(d). First, it proposed making certification conclusive for litigation *commenced* in, as opposed to *removed* to, federal court. Second, H.R. 4612 proposed deleting language that explicitly provided for federal district court review of the attorney general's certifica-

---

**30.** *Compare* 28 U.S.C. § 2679(d) (1982) (amended 1988), *infra* note 31, *with* 28 U.S.C. § 2679(d) (1988), *supra* notes 2–6.

**31.** Before the 1988 amendments, the entire text of § 2679(d) read as follows:

Upon certification by the Attorney General that *the defendant employee was acting within the scope of his employment at the time of the incident out of which the suit arose*, any such civil action or proceeding commenced in a State court shall be removed without bond at any time before trial by the Attorney General to the district court of the United States for the district and division embracing the place wherein it is pending and the proceedings deemed a tort action brought against the United States under the provisions of this title and all references thereto. *Should a United States district court determine on a hearing on a motion to remand held before a trial on the merits that the case so removed is one in which a remedy by suit within the meaning of subsection (b) of this section* [the subsection that makes a suit against the United States the exclusive remedy for a tort committed by a governmental employee within the scope of his employment] *is not available against the United States, the case shall be remanded to the State court.* 28 U.S.C. § 2679(d) (1982) (amended 1988) (emphasis added).

**32.** *See id.*

**33.** *See id.*

**34.** *See id.*

**35.** After the hearings on H.R. 4358, the bill was amended and retitled H.R. 4612. H.R.Rep. No. 700, 100th Cong., 2d Sess. 9 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5945. The amended bill retained all of the substantive changes to § 2679(d) proposed in H.R. 4358 but included a new and significantly different subsection that would become the current § 2679(d)(3). Congress passed the amended bill, H.R. 4612, and 28 U.S.C. § 2679(d) was revised accordingly.

**36.** H.R. 4612, 100th Cong., 2d Sess. (1988).

**37.** *Id.* at § 6. *See also* 28 U.S.C. § 2679(d)(1), *supra* note 2.

**38.** H.R. 4612 at § 6; 28 U.S.C. § 2679(d)(2), *supra* note 3.

**39.** H.R. 4612 at § 6; 28 U.S.C. § 2679(d)(3), *supra* note 4.

**40.** *See* 28 U.S.C. § 2679(d)(4), *supra* note 5.

tion.[41]  The first half of the third subsection provided that a defendant employee could petition for court certification if the attorney general refused to certify.[42]  Upon the filing of such a petition in state court, however, the subsection provided that the attorney general could remove the state action to the federal district court.[43]  If the federal court denied the employee's petition for court certification, the subsection provided that the action would be remanded to the state court.[44]  Finally, subsection four made clear that upon certification, the federal district would have exclusive subject matter jurisdiction under § 1346(b).

We can presume that Congress *purposefully* deleted the old § 2679(d)'s reference to district court review of the attorney general's certification from the statute.  Congress must be presumed to have knowledge of its previous legislation when making new laws. *Hellon & Assocs., Inc. v. Phoenix Resort Corp.*, 958 F.2d 295, 297 (9th Cir.1992). Thus, Congress must have been familiar with each of the old § 2679(d)'s provisions, including its provision for district court review of that certification.[45]  While the other provisions were retained by the 1988 amendments almost verbatim in § 2679(d)(2), the language expressly empowering the federal district court to review the attorney general's certification was deleted entirely.[46]  "When legislators delete language, we may assume that they intended to eliminate the effect of the previous wording." *Stewart v. Ragland*, 934 F.2d 1033, 1037 n. 6 (9th Cir.1991).

### C

The subcommittee report that accompanied H.R. 4612, like the 1988 post-hearing amendments, is strong evidence of Congress' intent that the attorney general's certification not be subject to district court review. *See In re Timbers*, 793 F.2d at 1396 (ranking text of the enacted bill as most authoritative, followed by post-hearing amendments and committee reports).  The report's summary of § 2679(d) emphasizes § 2679(d)(1)'s mandate that the United States be substituted as defendant after the attorney general's certification and discusses district court determination of scope only as an alternative route to certification, not as a means of decertification:

> Section 6 [of the Westfall Act] would amend section 2679(d) of title 28 to *require* the United States to be substituted for a Federal employee as the sole defendant in a civil lawsuit *whenever* the Attorney General determines that the act or omission alleged to have caused the claimant's injuries was within the scope of the employee's office or employment.  Once made, this determination also would require that any case filed in State court be removed to a Federal district court.  If the Attorney General *refuses* to certify that an employee was acting within the scope of his office or employment, the employee is authorized to petition the Court for a ruling on this determination.[47]

The committee report also reveals that legislators enacted H.R. 4612, at least in part, precisely because they wanted to minimize the amount of fact finding required in scope of employment cases.  This is evident from the report's discussion of why the Supreme Court's decision in *Westfall v. Erwin* [48] necessitated the proposed legislation:

---

41.  *Compare* 28 U.S.C. § 2679(d) (1982), *supra* note 31, *with* 28 U.S.C. § 2679(d) (1988), *supra* notes 2–6.

42.  *See* 28 U.S.C. § 2679(d)(3), *supra* note 4.

43.  *See id.*

44.  "If, in considering the petition, the district court determines that the employee was not acting within the scope of his office or employment, the action or proceeding shall be remanded to the State court." *See id.*

45.  *See* § 2679(d) (1982) (amended 1988), *supra* note 31.

46.  *Compare* 28 U.S.C. § 2679(d) (1982) (amended 1988), *supra* note 31, *with* 28 U.S.C. § 2679(d) (1988), *supra* notes 2–6.

47.  H.R.Rep. No. 100–700, 100th Cong., 2d Sess. 1, 9 (1988), *reprinted in* 1988 U.S.C.C.A.N. pp. 5945, 5952 [hereinafter *Committee Report*] (emphasis added).

48.  *Westfall v. Erwin*, 484 U.S. 292, 108 S.Ct. 580, 98 L.Ed.2d 619 (1988).

[B]efore *Westfall,* most actions brought against Federal employees in their personal capacity were resolved through a summary judgment or dismissal early in the case. This early resolution of the case was possible because the employee could be shown to have been acting within the scope of employment, and therefore absolute immunity precluded recovery. Under *Westfall,* summary judgments and dismissals will no longer be readily available because the additional determination as to whether the employee exercised governmental "discretion" will always be a fact-based determination. Thus the transaction costs (i.e. litigation costs) and length of time needed to resolve the issue of discretion in these cases will be substantially increased, as will the uncertainty for the individual employee who is sued.

*Committee Report, supra* note 47, at 2.

These dual concerns, avoiding litigation costs and protecting employees from the possibility of being held personally liable for torts that they rationally believed they committed within the scope of their employment, are expressed throughout the committee report.[49] Taken together, they account for the legislature's decision to make court determination of scope available only to the defendant employee who has been *refused* certification. While allowing employees to challenge such refusals in court might result in additional litigation costs, employees would enjoy greater protection against personal liability. To allow judicial review of certifications that are *granted* would frustrate the legislature's attempt both to protect employees and to decrease litigation time and expense.

Thus, the committee report on H.R. 4612, the bill that amended § 2679(d), also strongly suggests that Congress intended the attorney general's certification to be unreviewable.

### III

The Court in *Lamagno* rejected what it termed "a plausible construction" of the statute in favor of unreviewability because of policy considerations favoring judicial reviewability. "Because the statute is reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review and that mechanical judgments are not the kind that federal courts are set up to render." *Lamagno,* — U.S. at —, 115 S.Ct. at 2236. While this traditional understanding may apply to executive determinations generally, I do not believe that it necessarily applies to the attorney general's certification determination under the Westfall Act. The attorney general's determination will, in almost every instance, constitute a waiver of sovereign immunity, a determination which was delegated by Congress to the executive branch. There is nothing necessarily disturbing about Congress's intention to make this type of determination unreviewable by the judiciary. A waiver of sovereign immunity by Congress is reviewed merely to determine that it is "unequivocal," and we will construe the waiver "strictly in favor of the sovereign." *United States Dep't of Energy v. Ohio,* 503 U.S. 607, 615, 112 S.Ct. 1627, 1633, 118 L.Ed.2d 255 (1992). The sole function of such a review is to make certain that Congress in fact intended to waive sovereign immunity, not that it was proper or well advised. Accordingly, the normal presumption in favor of reviewability should

---

**49.** *See, e.g., Committee Report, supra* note 47, at 2 ("H.R. 4612 would provide immunity for Federal employees from personal liability for common law torts committed within the scope of their employment."). Later in the report, the following statement appears:

Currently, in most cases, the federal government defends federal workers who are sued for common law torts committed within the scope of their employment. With such suits against federal workers foreclosed by the bill, there could be an increase in suits under the FTCA against the U.S. government. Nevertheless, we expect that total costs to the federal government would decline, because FTCA defenses usually cost less than personal liability defenses, and FTCA cases are almost always easier to settle than personal liability cases.... In addition, the immunity provided by H.R. 4612 could have a positive effect on worker performance and productivity to the extent that workers would not be worried about potential lawsuits.

*Id.* at 11.

not necessarily apply to the attorney general, who, in exercising his delegated authority, decides to waive sovereign immunity.

The Court's opinion in *Lamagno,* however, identifies an instance where the attorney general's determination may be made in circumstances at least arguably constituting a conflict of interest.[50] In other words, there may be instances where the scope certification under the Westfall Act will *effectively* not constitute a waiver of sovereign immunity because it results in the case being dismissed.[51] This anomalous situation should not, however, cause us to reject the controlling effect of unambiguous language in the statute. "Where the language of a statute is clear and unambiguous, courts should not undertake to add or to detract from its provisions. Any such revision should be effected by legislative, not juridical powers." *Birdwell v. Skeen,* 983 F.2d 1332, 1338 (5th Cir. 1993).

As discussed above, I believe that the statute's unambiguous language, as well as its relevant legislative history, strongly suggest that Congress intended the attorney general's scope certification to be unreviewable. This conclusion also dictates my understanding as to why Congress could safely mandate exclusive jurisdiction in the federal courts under § 1346(b) upon certification. 28 U.S.C. § 2679(d)(4). The question of certification in this case is a mere prelude to the issue of jurisdiction, assuming that certification is not reviewable. It is clear that § 2679(d)(4) takes its cue from the previous three sections. Each presupposes that the United States is the proper defendant under the FTCA (not state law) and that jurisdiction would be exclusive under § 1346(d). Conversely, § 2679(d)(3) addresses the situation before us where there is no federal jurisdiction because the employee was found not to have been within the scope of his employment, requiring remand to the state court. In other words, the arguments supporting non-reviewability of the attorney general's scope certification necessarily supports exclusive jurisdiction under § 1346(b).

I believe that today's result, which indeed raises "grave" Article III concerns, supports this reading of the statute in favor of unreviewability. Once the scope certification is rejected, there can be no federal jurisdiction based on the substitution of the United States as party defendant. In this case there is also no jurisdiction based on diversity of citizenship. What then constitutes the basis for federal jurisdiction in this case? As stated above, I am not as comfortable as the majority to conclude that federal jurisdiction may properly rest on the fact that there is an "initial colorable federal question" at the time of removal. The Supreme Court has not yet fully addressed the implications of adopting a reading in favor of reviewability of the scope certification in light of these Article III concerns. I therefore respectfully urge the Court to revisit the issue of reviewability in light of the statute's clear language, relevant legislative history, and today's troubling result.

---

50. *See Lamagno,* —— U.S. at ——, 115 S.Ct. at 2237 (stating that the attorney general's "conflict of interest is apparent" where the certification would result in dismissal) (plurality opinion); *id.* at ——, 115 S.Ct. at 2238 (agreeing with the principle that prohibits anyone "to be a judge in his own cause") (internal quotation marks omitted) (O'Connor, J., concurring in part); *but see id.* at —————— & n. 5, 115 S.Ct. at 2242–43 & n. 5 (questioning whether this situation presents a genuine conflict of interest).

51. *See id.* at ——, 115 S.Ct. at 2230; 28 U.S.C. § 2680(k) (exception to FTCA's waiver of the United States' sovereign immunity for "[a]ny claim arising in a foreign country").