David **MONTEZ**, Individually and as Next Friend of Nicholas **MONTEZ**, Deceased, et al., Plaintiffs,

v.

**DEPARTMENT OF the NAVY, Defendant.**

**No. 3–02–CV–1070–BD.**

United States District Court, N.D. Texas, Dallas Division.

May 30, 2003.

C. Randal Johnston, Johnston & Tobey, Dallas, TX, for Plaintiffs.

William J. Anderson, U.S. Attorney's Office, For Worth, TX, for Defendant.

## MEMORANDUM OPINION AND ORDER

KAPLAN, United States Magistrate Judge.

Defendant United States of America has filed a motion to dismiss this personal injury and wrongful death action brought under the Federal Tort Claims Act for lack of subject matter jurisdiction. For the reasons stated herein, the motion is granted.

## I.

This case arises out of a single car accident that killed two teenagers and seriously injured three other passengers. The driver of the car, Emilio Partida, was on active duty in the United States Navy serving a temporary assignment at the Naval Recruiting Station in San Angelo, Texas. (Plf.App. at 24–28). Partida and five of his friends were traveling to a wedding party and dance in Big Lake, Texas in a Navy vehicle when the accident occurred shortly after 9:00 p.m. on New Year's Eve, December 31, 2000. (*Id.* at 62–65, 110–12).

Partida was qualified to operate military motor vehicles and was permitted on occasion to drive a Navy car to and from his home in Mertzon, Texas. (*Id.* at 33–38). On December 30, 2000, Petty Officer Gene D. Martin let Partida borrow a Navy car to visit his family over the New Year's holiday. (*Id.* at 67; Def.App. at 20, ¶¶ 11–12). Partida was told to park the car at his house until he returned to work on January 2, 2001 and not to use the car as a personal vehicle. (Plf.App. at 67; Def. App. at 20, ¶ 13). According to Martin, the car was not given to Partida for any Navy or governmental purpose "other than to serve as a moral booster for him by allowing him to spend the holiday with his family." (Def.App. at 21, ¶ 14).[1]

Contrary to Martin's instructions, Partida drove the Navy vehicle to a ranch just outside of San Angelo on the evening of December 30, 2000. (Plf.App. at 49). On the way, he picked up 16–year old Abel Valencia. (*Id.* at 49–50). Partida and Abel drank beer at the ranch before returning to Mertzon. (*Id.* at 50). The next day, Partida drove the Navy car to a mall

---

1. Martin's commanding officer, Captain P.M. Ricketts, testified by affidavit that Partida should not have been allowed to use a Navy vehicle to drive home for the New Year's holiday. (Def.App. at 4, ¶ 9). The applicable Naval regulation provides:

   Government-owned and rented vehicles will be used for official purposes only in accordance with the provisions of the NAVFAC P–300. Use of a Government vehicle for other than official purposes is a misuse of Government property. Such misuse is a violation of the Uniform Code of Military Justice and Federal law and may result in criminal, disciplinary, or adverse administrative action.

   Commander Navy Recruiting Command Instruction ("COMNAVCRUITCOMINST") 4400.1C, § 804.1 (*See id.* at 13).

in San Angelo with Abel and 18–year old Carlos Natividad. (*Id.* at 52). Another friend, 17–year old Nicholas Montez, met them at the mall. (*Id.* at 56). Earlier in the week, Partida and his friends had decided to attend a wedding party and dance in Big Lake, Texas on New Year's Eve. (*Id.* at 62–63). When they were unable to borrow another car, Partida volunteered to drive his friends in the Navy vehicle knowing he was not authorized to do so. (*Id.* at 63, 65, 87). Partida picked up Abel, Carlos and Nicholas, along with 17–year old Kimberly Whitt and 17–year old Ray Montez, Jr., on his way to the wedding. (*Id.* at 65). After stopping at a grocery store to buy beer, Partida and his five passengers embarked on their 43–mile trip from Mertzon to Big Lake. (*Id.* at 55, 65–66; Def.App. at 6, ¶ 11(h)). While en route, Partida lost control of the vehicle while attempting to negotiate a sharp curve at a high rate of speed. (Plf.App. at 111). The car flipped, ejecting Kimberly, Nicholas, and Ray. Kimberly and Nicholas died as a result of their injuries. (*Id.* at 62, 111–12). Ray, Abel, and Carlos were seriously injured in the accident. (*Id.* at 112).[2]

The legal representatives of Kimberly Whitt and Nicholas Montez, joined by the surviving passengers, now sue the United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, *et seq.* Defendant has filed a motion to dismiss for lack of subject matter jurisdiction. As grounds for its motion, defendant contends that Partida was acting outside the scope of his employment with the federal government at the time of the accident made the basis of this suit. The motion has been fully briefed by the parties and is ripe for determination.

## II.

A party seeking to invoke the jurisdiction of a federal court must prove that jurisdiction is proper. *Stockman v. Federal Election Comm'n,* 138 F.3d 144, 151 (5th Cir.1998); *Cross Timbers Concerned Citizens v. Saginaw,* 991 F.Supp. 563, 566 (N.D.Tex.1997). In ruling on a motion to dismiss, the court must accept all factual allegations in the complaint as true. *Den Norske Stats Oljeselskap As v. HeereMac Vof,* 241 F.3d 420, 424 (5th Cir.2001), *cert. denied,* 534 U.S. 1127, 122 S.Ct. 1059, 151 L.Ed.2d 967 (2002). Dismissal is warranted if those allegations, together with any undisputed facts and the court's resolution of disputed material facts, establish that there is no basis for federal subject matter jurisdiction. *See Stockman,* 138 F.3d at 151; *Barrera–Montenegro v. United States,* 74 F.3d 657, 659 (5th Cir.1996).

The federal government and its agents and employees are generally immune from suit under the doctrine of sovereign immunity. *See Davis v. United States,* 961 F.2d 53, 56 (5th Cir.1991); *Williamson v. Dep't of Agriculture,* 815 F.2d 368, 373 (5th Cir.1987). However, the government has accepted liability for common torts to the same extent and in the same manner as liability would attach to private individuals in similar circumstances. *Williamson,* 815 F.2d at 373. The FTCA is the exclusive remedy for torts committed by federal employees, including members of the military or naval forces of the United States, acting within the scope of their employment. *See* 28 U.S.C. § 2674; *McGuire v. Turnbo,* 137 F.3d 321, 324 (5th Cir.1998). The relevant jurisdictional statute provides, in pertinent part:

> [T]he district courts [...] shall have exclusive jurisdiction of civil actions on

---

2. Partida received a general discharge from the Navy as a result of this incident. (Def.App. at 7, ¶ 13; Plf.App. at 47–48). He was also convicted of vehicular manslaughter and sentenced to 10 years probation. (Plf.App. at 72–73).

claims against the United States, for money damages, [. . .] for injury or loss of property, or personal injury or death *caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment,* under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1) (emphasis added). A member of the military acts within the scope of his office or employment if he is acting "in the line of duty." *Id.* § 2671. This determination is made under applicable state rules of *respondeat superior. Garza v. United States,* 809 F.2d 1170, 1171 (5th Cir.1987), *citing Williams v. United States,* 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955).

■ Under Texas law, an employee is within the scope of his employment if acting: (1) within the general authority given by the employer, (2) in furtherance of the employer's business, and (3) for the accomplishment of the object for which he is employed. *Garcia v. United States,* 88 F.3d 318, 320–21 (5th Cir.1996), *citing Robertson Tank Lines, Inc. v. Van Cleave,* 468 S.W.2d 354 (Tex.1971). Conduct may be within the scope of employment, although done in part to serve the purposes of the employee or a third person. "If the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act otherwise is within the service of his employer." *Best Steel Buildings, Inc. v. Hardin,* 553 S.W.2d 122, 128 (Tex.Civ. App.—Tyler 1977, writ ref'd n.r.e.). However, "when the servant turns aside, for however short a time, from the prosecution of the master's work to engage in an affair wholly his own, he ceases to act for the master, and the responsibility for that which he does in pursuing his own business or pleasure is upon him alone." *Garcia,* 88 F.3d at 321, *quoting Texas & Pacific Ry. Co. v. Hagenloh,* 151 Tex. 191, 247 S.W.2d 236, 241 (1952).

■ There is a presumption that an employee involved in an accident while driving the employer's vehicle is acting within the scope of employment. *Garcia,* 88 F.3d at 321, *citing J & C Drilling Co. v. Salaiz,* 866 S.W.2d 632, 636 (Tex.App.— San Antonio 1993). In order to rebut this presumption, the employer must show that the driver was on a personal errand, or frolic, at the time of the accident. *J & C Drilling,* 866 S.W.2d at 637, *citing Robertson Tank Lines,* 468 S.W.2d at 358. Once the employer adduces such evidence, the plaintiff must produce other evidence that the driver was acting in the scope of his employment. *Id.*

### III.

The sole issue before the court is whether Partida was acting "within the scope of his office or employment" as a member of the United States Navy at the time of the accident. Plaintiffs attempt to satisfy this jurisdictional prerequisite by showing that Partida, while serving a temporary assignment as an assistant Navy recruiter, was actively recruiting his friends to join the Navy on the way to the wedding in Big Lake, Texas. In support of this argument, plaintiffs rely on the affidavit testimony of Ray Montez, Jr., Abel Valencia, and Carlos Natividad. According to Ray:

> It was my experience in socializing and interacting with Emilio Partida before December 31st, 2000, that he would constantly talk about the Navy and attempt to convince myself, Kimberly Whitt and Nicholas Montez to join the Navy. He would, in fact, talk about the Navy and attempt to recruit us on a daily basis.

\*   \*   \*   \*   \*   \*

On December 31st, 2000, as Emilio Partida was driving us to an event in Big Lake, Texas and immediately before the auto accident occurred, he was discussing the Navy, describing the benefits of being in the Navy, and was attempting to recruit myself, Kimberly Whitt, Nicholas Montez and other passengers in the vehicle and convince us to join the Navy.

\* \* \* \* \* \*

On December 31st, 2000 as we were driving to the wedding and dance in Big Lake, Texas and immediately before the accident in question, Emilio Partida stated that going to the dance and wedding party in Big Lake, Texas. was a good opportunity for him to meet and recruit other young people who would be eligible and willing to join the Navy.

(Plf.App. at 121–22, ¶¶ 6, 10, 12). Abel and Carlos testified to essentially the same facts in their affidavits, although Carlos did not mention Partida's recruiting efforts en route to the wedding. (*Id.* at 125–26, ¶¶ 6, 10, 12 & 129, ¶ 6). Plaintiffs argue that such activities are consistent with the Recruiter Leadership and Management Manual, which provides in pertinent part:

5.1.7 *Personnel Home on Leave*

Most young Sailors home on leave are enthusiastic about the Navy. They are one of the best forms of evidence that you can present to an applicant. It is a good recruiting practice to take advantage of the fact that Navy personnel home on leave are excellent examples of the advantages of being in the Navy. The efficient recruiter will take the. initiative to fully use programs such as [...] Recruiting Leave Assistance Leave Program (RLAP). These programs are designed to return outstanding Navy personnel to their home areas to assist local recruiters in locating quality prospects and establishing centers of influ-

ence. [...] Be prepared for their arrival. Develop a detailed plan on how you intend to employ them. *They Are Not There To Stuff Envelopes And Act As Your Personal Secretary!* Have them accompany you on home visits, school visits, and participate in interviews of potential enlistees.

(*Id.* at 134) (original emphasis). Plaintiffs also point out that Partida was driving a Navy vehicle at the time of the accident, which gives rise to a rebuttable presumption that he was acting within the scope of his employment. *See Garcia,* 88 F.3d at 320–21.

### A.

■ The court initially observes that, despite plaintiffs' argument to the contrary, Partida was not a Naval recruiter. Captain P.M. Ricketts, Commanding Officer of the United States Navy Recruiting Orientation Unit, testified that Partida was temporarily assigned to the Naval Recruiting Station in San Angelo, Texas for a period of 101 days prior to reporting for duty at his assigned military training school. (Def.App. at 1–2, ¶¶ 3, 5, 6).[3] Partida was not trained as a recruiter and was not authorized to perform official duties in that capacity. Rather, his job function was to provide office support, file paperwork, make phone calls to potential applicants, and accompany recruiters to local schools. (*Id.* at 2, ¶ 6; *see also* Plf.App. at 29–33). Even Partida acknowledged that as an E–3 enlisted man, he was not eligible to be trained as a recruiter. (Plf.App. at 79). Thus, the court finds that Partida lacked actual authority to engage in any recruiting activities.

### B.

Plaintiffs further argue that the government is liable under the doctrine of appar-

3. Partida was scheduled to attend the AEGIS Training Center in Dahlgren, Virginia in prep-

aration for a permanent assignment on a guided missile cruiser. (Def.App. at 2–3, ¶ 6).

ent authority because Partida "was allowed to hold himself out to others and did hold himself out ... [as] an assistant navy recruiter." (Plf. Resp. at 14). Although it does not appear that the Fifth Circuit has addressed this issue, other circuit courts have declined to impose liability under the FTCA based on the apparent authority of government employees. *See St. John v. United States*, 240 F.3d 671, 676 (8th Cir. 2001) (recognizing that government's waiver of sovereign immunity is strictly limited to negligent acts of employees acting "within the scope of [their] office or employment," regardless of state law doctrine of apparent authority); *Pierson v. United States*, 527 F.2d 459, 464 (9th Cir.1975) (same).

■ Moreover, even if apparent authority is a viable theory of liability, there is no evidence that the Navy knowingly permitted Partida to hold himself out as a recruiter or failed to exercise ordinary care so as to clothe Partida with the indicia of authority, "thus leading a reasonably prudent person to believe that the agent has the authority [he] purports to exercise." *See Ames v. Great Southern Bank*, 672 S.W.2d 447, 450 (Tex.1984), *citing* RESTATEMENT (SECOND) OF AGENCY § 8 (1958). The only evidence even remotely touching on this issue are business cards ordered by Partida with "Navy Recruiter" printed underneath his name. (Plf.App. at 140). However, these cards were not authorized by the Navy, were paid for by Partida, and were not printed until after the accident. (*Id.* at 91–95). The court finds this evidence insufficient to establish apparent authority.

### C.

■ Assuming *arguendo* that Partida had either actual or apparent authority to recruit prospects on behalf of the Navy, the court finds that he was not performing such duties in furtherance of his employer's business at the time of the accident.

The evidence shows that December 31, 2000 fell on a Sunday. Partida was off-duty and not in uniform. (*Id.* at 65, 87). He drove Abel Valencia to a San Angelo mall where they shopped and ate pizza. (*Id.* at 52). Later that day, Partida agreed to drive his friends to a wedding party and dance in Big Lake, Texas in a car he borrowed from his supervisor, Petty Officer Gene D. Martin. (*Id.* at 63–67, 89). This not only violated Navy policy, but Martin's express instructions not to use the car as a personal vehicle. (*Id.* at 67; Def.App. at 4, ¶ 9 & 13). On the way to the wedding, Partida bought 100 cans and bottles of beer at a grocery store and put them in the trunk of the car. (Plf.App. at 55–56). When asked at his deposition about the purpose of this trip, Partida admitted it was for personal rather than business reasons:

> Q: The use of the car, did you deem that you were conducting any government business when you were driving the car to the wedding that night?
>
> A: Government business?
>
> Q: Yes.
>
> A: No.
>
> Q: Would you deem that trip basically just a personal trip?
>
> A: Right.

(*Id.* at 83). These facts, even if viewed in the light most favorable to plaintiffs, fail to establish that Partida was in the "line of duty" or performing an essential function of his government work at the time of the accident. *See, e.g. Melendez Colon v. United States*, 56 F.Supp.2d 147, 151 (D.P.R.1999) (Navy captain who drove government car off-base to two local bars was not acting within the scope of his employment at the time of collision, even though captain was considered "on duty" 24 hours a day); *Weaver v. United States Coast*

*Guard,* 857 F.Supp. 539, 543–44 (S.D.Tex. 1994), *aff'd,* 53 F.3d 1282 (5th Cir.1995) (Coast Guard member who caused fatal automobile accident by negligently operating government car was not acting within the scope of his employment where, *inter alia,* he was not traveling pursuant to specific orders, he was not dressed in uniform, he was not compensated for travel time, and he was not given travel allowance).

Nor is the mere fact that Partida was operating a Navy vehicle sufficient to establish that he was acting within the course and scope of his employment. Defendant has sufficiently rebutted this presumption by showing that Partida was told to park the car at his house and not to use the vehicle for personal errands. Moreover, Partida testified that his trip to Big Lake for the wedding constituted an unauthorized use of a Navy vehicle. (Plf.App. at 87). *See Robertson Tank Lines,* 468 S.W.2d at 360 (employer rebutted presumption by showing that employee was on personal errand at time of accident); *Gant v. Dumas Glass and Mirror, Inc.,* 935 S.W.2d 202, 212 (Tex.App.—Amarillo 1996, no writ) (same); *J & C Drilling,* 866 S.W.2d at 637 (same).

The court is mindful of the unfortunate consequences and harsh realities of its ruling. Without legal recourse against the government, it is unlikely that these innocent victims and their families will ever be compensated for their devastating physical and emotional injuries. However, the principles of sovereign immunity are unyielding and leave the court with no discretion. Unless Partida was acting within the scope of his office or employment at the time of the accident, there is no jurisdiction under the FTCA. Such is the case here. Accordingly, this action must be dismissed.

## CONCLUSION

Defendant's motion to dismiss is granted. By separate order this date, the court will dismiss this case for lack of subject matter jurisdiction.

**SO ORDERED.**